UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SETH LONG,

          Plaintiff,

   v.

GRACO CHILDREN'S PRODUCTS INC., et al.,

          Defendants.

Case No.  13-cv-01257-WHO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 34

**INTRODUCTION**

Plaintiff Seth Long brings this putative class action against defendants Graco Children's Products Inc. ("Graco") and Newell Rubbermaid Inc. ("Newell") because he alleges that the defendants manufactured and sold children's car seats with buckles that were difficult or impossible to unlatch. Long charges eight causes of action under California and federal law. The defendants move to dismiss Long's First Amended Complaint ("FAC"). For the following reasons, the Motion to Dismiss the FAC is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Graco manufactures a variety of products for infants and toddlers, such as car seats, strollers, and high chairs. FAC ¶ 27. Newell is Graco's ultimate parent corporation. FAC ¶ 24; Br. 1. Long alleges that, from 2009 to 2012, the defendants produced a number of car seat models with harnesses that contain a defective buckle known as the "QT Buckle" ("class car seats").

United States District Court
Northern District of California

United States District Court
Northern District of California

## I.      LONG PURCHASES THE CLASS CAR SEAT

Around March 2010, Long bought a Graco-made car seat—a My Ride 65 with a QT Buckle—at a Babies "R" Us retail store.  FAC ¶ 51.  Before buying it, Long claims that he "did research about the car seat including, but not limited to, reviewing the product packaging and related descriptions, including the packaging's safety information."  FAC ¶ 51.  A few months after his purchase, Long found the car seat's buckle "unreasonably difficult or impossible to unlatch."  FAC ¶ 53.  At one point, his son was trapped in the car seat because the QT Buckle would not open, so Long had to use a knife to release the buckle.  FAC ¶ 53.  Afterwards, "[b]ecause the car seat continued to malfunction," Long complained to the defendants and they sent him a replacement buckle.  FAC ¶ 53.  Even so, the replacement buckle had the same problem unlatching.  FAC ¶ 53.

In November 2011, after Long had a car accident, his insurance company required him to purchase a new children's car seat.  FAC ¶ 54.  Because the insurance company would only reimburse Long for the same car seat model he had prior to his accident, Long bought another My Ride 65 car seat in November 2011.  FAC ¶ 54.  He claims that he bought the same model in order to receive the reimbursement, but also because he "believed that the issues he had with the first car seat may have been unique to that specific car seat."  FAC ¶ 54.  "Soon afterwards," Long had problems unlatching the QT Buckle in his second car seat as well.  FAC ¶ 54.  Within six months, the QT Buckle would not open at all.  FAC ¶ 54.  Long then suspected that there was an "undisclosed problem with the QT Buckle or design" and stopped using the Graco My Ride 65 car seat, buying another car seat from a different company instead.[1]  FAC ¶ 54.

## II.     THE NHTSA INVESTIGATION

On October 15, 2012, the Office of Defects Investigation ("ODI") of the National Highway Traffic Safety Administration ("NHTSA") opened an investigation into Graco My Ride and

---

[1] In their briefs and at argument, the defendants appear to argue that because Long purchased a second class car seat of the same model for which he was reimbursed, he suffered no harm and his claims are undermined.  This argument is unpersuasive.  As discussed below, Long adequately pleads several of his causes of actions to survive a motion to dismiss, whether premised on the alleged defects in his first class car seat only or both class car seats.

Nautilus child car seats based on "consumer complaints that the harness buckles were unreasonably difficult to unlatch, or not able to be unlatched at all."  FAC ¶¶ 33, 34.  The ODI started its investigation based on 25 reports alleging defects in Graco My Ride and Nautilus models from 2009 to 2011.  FAC ¶ 34.  Long claims that the ODI has thus far received "upwards of 85 reports" about "widespread and dangerous" defects in the class car seats, and "hundreds, if not thousands, of purchasers of the class car seats have experienced these unbuckling problems."  FAC ¶¶ 34, 35.  Five of the NHTSA reports pre-date Long's initial purchase of a class car seat, and 22 pre-date his second purchase.  FAC ¶ 34.  Nine complainants could not unlatch their buckle at all—three of these cut the harness, and the other six had to pull their children out.  FAC ¶ 34.  After looking into these two particular models, the ODI "expanded" the investigation to include all Graco-made car seats with the same buckles.  FAC ¶ 34.  On February 21, 2013, the ODI "upgraded its investigation to an Engineering Analysis to further study the defect of the class car seats."  FAC ¶ 45.

Long states that Graco's written response to the NHTSA investigation shows that Graco was "keenly aware" of the unlatching issue, acknowledged "consumer frustration" with the buckle, and "was addressing the complaints through design improvements."[2]  FAC ¶ 43.  He says that Graco "secretly agreed to extend the normal one year warranty coverage to an unlimited warranty . . . for consumers who complained about the buckle."  FAC ¶ 43.  Graco attributed the buckles' problems to "foreign material accumulating in the buckle."  FAC ¶ 44.  Long argues, however, that "reasonable consumers expect that children's car seats will get dirty and that even if some dirt accumulates in the latch, the buckles will open."  FAC ¶ 44.  In any event, the

---

[2] Long submitted for judicial notice Graco's response to the NHTSA's preliminary evaluation into consumer complaints about certain buckles produced by the defendants.  Dkt. No. 44.  While a court generally may not consider material beyond the complaint when considering a Rule 12(b)(6) motion, the court "may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute."  *Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (quotation marks omitted).  Appropriate materials for judicial notice include "records and reports of administrative bodies."  *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008).  Because the NHTSA is an administrative body, and neither party objects to Long's submission, the Court takes judicial notice of the defendants' response to the NHTSA's preliminary evaluation.

United States District Court
Northern District of California

defendants did not provide "material information regarding the necessary cleaning procedures for the car seats, and consumers have complained that they cannot open the buckles even after cleaning the buckle mechanism." FAC ¶ 44.

### III.    THE ALLEGATIONS

Long brings this putative class action for all purchasers of Graco car seats in various models manufactured between January 1, 2009, and October 2012 equipped with a "QT Buckle." FAC ¶ 1. He alleges that the defendants designed and used the QT Buckle in its car seats from approximately 2009 to 2012. FAC ¶ 7. Long claims that the class car seats are defective because the QT buckle "is either unreasonably difficult to unlatch or simply will not unlatch." FAC ¶ 2.

Long alleges that the defendants advertised the class car seats as having a "5-point, front-adjust harness [that] helps you get baby in and out." FAC ¶ 4. He argues that the defendants "warranted and promised the class car seats as free from defects and suitable for their intended use." FAC ¶ 32. Long claims that numerous consumers struggle to unlatch their child from the class car seats; have to cut the harness in order to remove their child; have to "manipulate" their child out of the car seat while the harness was still buckled; or stopped using the car seat altogether. FAC ¶ 2. The defects, he claims, pose an "unreasonable safety hazard" to consumers and their children because of the difficulty of removing a child from the class car seat during an emergency. FAC ¶ 6.

Long alleges that the defendants knew that the class car seats were defective and failed to disclose the defect. FAC ¶¶ 2, 5. The source of their knowledge, which was not available to consumers, came from "pre-release testing data, early consumer complaints . . . testing conducted in response to those complaints, high failure rates, return and exchange data, [and] other internal sources of aggregate information." FAC ¶ 38. He claims on information and belief that the defendants "would monitor NHTSA [National Highway Traffic Safety Administration] and various other websites," and "reviewed and/or used complaints and feedback from consumers about the class car seats' QT buckle to evaluate them." FAC ¶ 39. Some of these complaints pre-date Long's purchase of his class car seat. FAC ¶ 40. Long claims that the defendants "knew or should have known that the defects were not known or reasonably discoverable" by consumers.

United States District Court
Northern District of California

4

FAC ¶ 37.

Long asserts that the defendants "made false, untrue, and/or misleading statements or omissions of fact in connection with the advertisement of the class car seats including that they were fit for their ordinary purpose, were free from defects, and that the '5-point, front-adjust harness helps you get baby in and out.'" FAC ¶ 74. He claims that the defendants, "through advertising, represented, warranted and promised that the class car seats would, among other things, permit the buckling and unbuckling of children from their car seats, would perform as intended, were free from defects, were fit for their ordinary purpose, and that the class car seats and their QT Buckle 'helps you get baby in and out.'" FAC ¶ 98. He further claims that "Defendants' promotional statements, advertisements, representations, and demonstrations regarding the class car seats became part of the basis of the bargain" between the defendants and consumers, thereby creating "express warranties that the class car seats would conform to the representations set forth in this Complaint." FAC ¶ 99.

Long claims that had he and consumers known about these defects, they would not have purchased a class car seat or would have paid less for them. FAC ¶¶ 10, 46. He argues that "the buckle defects are material facts that a reasonable consumer would consider when deciding whether to purchase, and/or how much to pay, for the class car seats." FAC ¶ 46. "Reasonable consumers," like Long, "reasonably expect that a child's car seat is safe, will function in a manner that will not pose a safety hazard, and is free from defects." FAC ¶ 47. Reasonable consumers expect that a manufacturer of car seats with known safety defects "will disclose any such defects"—however, "Defendants [failed] to disclose the harness buckle defects to them and [] continually deny the defects." FAC ¶ 47. Specifically, Long alleges that the defendants failed to disclose or actively concealed: (1) "any and all known material defects or material nonconformity of the class car seats," and (2) "that the class car seats, including their 'QT Buckle,'" were defective. FAC ¶ 48. The defendants still have not notified Long that the class car seats "suffer from systemic defects that cause the harness buckle to malfunction." FAC ¶ 49.

Long argues that the "Defendants' unfair and deceptive business practices have caused Plaintiff and other California consumers to lose money in that they purchased or paid a premium

for the class car seats when they otherwise would not have."  FAC ¶ 50.  Long alleges that the

"Defendants have failed and continue to fail to refund Plaintiff and Class Members' purchases of

the class car seats, all to Defendants' profit."  FAC ¶ 7.  He alleges that the defendants "knew

about and concealed the defects in every car seat, along with the attendant dangerous safety

hazard" and "refused to acknowledge their existence."  FAC ¶ 9.

Long brings the following causes of actions against the defendants:  (1) violations of

California's False Advertising Law, CAL. BUS. & PROF. CODE §§ 17500, *et seq.*; (2) violations of

California's Consumer Legal Remedies Act, CAL. CIV. CODE §§ 1750, *et seq.*; (3) breach of

express warranty under California's Song-Beverly Consumer Warranty Act, CAL. CIV. CODE

§§ 1791.2, 1793, and 1795, *et seq.*; (4) breach of implied warranty under California's Song-

Beverly Consumer Warranty Act, CAL. CIV. CODE §§ 1791.1, *et seq.*, and 1792; (5) breach of

express warranty under the California Commercial Code, CAL. COM. CODE § 2313; (6) breach of

implied warranty of merchantability under the California Commercial Code, CAL. COM. CODE

§ 2314; (7) breach of implied warranty under the federal Magnuson-Moss Warranty Act, 15

U.S.C. §§ 2301, *et seq.*; (8) and violations of California's Unfair Competition Law, CAL. BUS. &

PROF. CODE §§ 17200, *et seq.*  Long requests that he and others similarly situated be certified as a

class and that he be appointed class representative.  FAC ¶ 153.  Long also requests declaratory

relief, injunctive relief, actual damages, and punitive damages.  FAC ¶ 153.  The defendants move

to dismiss Long's FAC in its entirety.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

pleadings fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The

Court must "accept factual allegations in the complaint as true and construe the pleadings in the

light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the

nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005).  A complaint

may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its

face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

United States District Court
Northern District of California

1  when the pleaded factual content allows the court to draw the reasonable inference that the

2  defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3  However, "a complaint [does not] suffice if it tenders naked assertions devoid of further factual

4  enhancement."  *Id.* (quotation marks and brackets omitted).  If a motion to dismiss is granted, a

5  court should normally grant leave to amend unless it determines that the pleading could not

6  possibly be cured by allegations of other facts.  *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*,

7  911 F.2d 242, 247 (9th Cir. 1990).

8       Additionally, fraud claims are subject to a higher standard and must be pleaded with

9  particularity.  FED. R. CIV. P. 9(b).  Claims grounded in fraud must "be accompanied by the who,

10  what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317

11  F.3d 1097, 1106 (9th Cir. 2003) (quotation marks omitted).  Such claims "must be specific enough

12  to give defendants notice of the particular misconduct which is alleged to constitute the fraud

13  charged so that they can defend against the charge and not just deny that they have done anything

14  wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

15  "[A]llegations of fraud based on information and belief [] may be relaxed with respect to matters

16  within the opposing party's knowledge," but must still "state the factual basis for the belief."

17  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  A plaintiff claiming fraud must also plead

18  reliance.  *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 326-27 (2011).  However,

19  knowledge may be pleaded generally.  FED. R. CIV. P. 9(b).

20                                    **DISCUSSION**

21  **I.     FRAUD CLAIMS**

22       Because Long's First Cause of Action under the False Advertising Law, Second Cause of

23  Action under the Consumer Legal Remedies Act, and Eighth Cause of Action under the Unfair

24  Competition Law sound in fraud, they must meet the heightened pleading standards of Rule 9(b).

25  *Vess*, 317 F.3d at 1103, 1106; *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 853 (N.D. Cal.

26  2012).

27       **A.  Second Cause of Action:  Consumer Legal Remedies Act**

28       The Consumer Legal Remedies Act ("CLRA") prohibits "[r]epresenting that goods . . .

have . . . characteristics, . . . benefits, or quantities which they do not have" or "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another." CAL. CIV. CODE § 1770 (West 2013).  Under this law, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  To survive a motion to dismiss, the plaintiff must plead with particularity that the defendant made an actual misrepresentation, an omission "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose" related to safety concerns. *Id.*; *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006); *see also Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 648 (Ct. App. 2006).  The challenged statements must be judged against the "reasonable consumer" standard. *Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d. 22, 29 (Ct. App. 2003).  A challenged claim is non-actionable "puffery" if it is a "[g]eneralized, vague, and unspecified assertion[] . . . upon which a reasonable consumer could not rely." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139-40 (C.D. Cal. 2005).

### 1.  CLRA:  Actual Misrepresentation

Long fails to plead with particularity that the defendants made any actual misrepresentations about the class car seats.  The CLRA provides a cause of action if a defendant represents that goods have characteristics that they do not have or are of a particular quality that they are not, and the plaintiff can show an actual misrepresentation.  CAL. CIV. CODE § 1770 (West 2013).  "[T]o be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012).

Here, Long claims that the defendants "warranted and promised the class car seats as free from defects and suitable for their intended use."  FAC ¶ 32.  But nowhere does Long point to any examples of such warranties or promises, let alone identify them with particularity.  The only actual statement Long alleges that the defendants made is that the "5-point, front-adjust harness helps you get baby in and out."  Long does not allege that the class car seats do not have "5-point, front-adjust harness[es]."  However, the statement that the defendants' harness or their QT Buckle

8

"helps you get" a child into and out of a car seat does not "make a specific and measurable claim," nor is it "capable of being proved false or [] reasonably interpreted as a statement of objective fact." *Vitt*, 469 F. App'x at 607. It is non-actionable puffery. As the Ninth Circuit noted, even a claim that a lamp is "far brighter" is puffery. *Cook, Perkiss & Liehe*, 911 F.2d at 246. Claiming that a car seat "helps" its user is no different. Rather, it is a generalized and vague assertion that no reasonable consumer could rely upon. *Anunziato*, 402 F. Supp. 2d at 1141. Because the one actual statement that Long identifies is non-actionable puffery, he has not adequately pleaded any actual misrepresentation by the defendants that would entitle him to relief.

Long's argument that the challenged statement is not a "product superiority claim," but rather is a "misdescription[] of specific or absolute characteristics of a product[, which is] actionable," does not help him. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (1997)). Even if the challenged statement is not a "product superiority claim," it hardly describes (or "misdescribes") a "specific" or "absolute" characteristic and still remains puffery because it is not "a specific factual assertion which could be established or disproved through discovery." *Anunziato*, 402 F. Supp. 2d at 1141. That the harness "helps you get baby in and out" is "inherently vague" and "incapable of objective verification and not expected to induce reasonable consumer reliance." *Id.* at 1140 (citations omitted). It is akin to other words that are not "product superiority" claims, but have nonetheless been held as puffery, such as "reliable," "quality," and "performance." *Id.*

Long's attempt to identify cases in which courts supposedly held that certain words were not "puffery" even when "the representation at issue was not quantifiable" also does not help him. Long cites to *Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008), which dealt with the term "nutritious," and *Delacruz v. Cytosport, Inc.*, which involved the term "healthy fats," No. C 11-3532-CW, 2012 WL 1215243 (N.D. Cal. April 11, 2012), as cases in which unquantifiable terms were not held to be puffery. However, in *Williams*, the court found the term "nutritious" to be actionable when it was accompanied by other misleading words and images even though it might not be actionable alone. 552 F.3d at 939 n.3. And in *Delacruz*, the court found that

9

"healthy fat" was actionable because it could deceive a reasonable consumer into believing that the product had unsaturated fat rather than saturated fat, i.e., the term was susceptible to proof. 2012 WL 1215243, at *6. Here, Long has not pointed to any other aspect of the class car seats' packaging or labeling that renders the challenged statement actionable in context, nor does the fact that a car seat harness "helps you get baby in and out" indicate to a reasonable consumer how a class car seat is one thing but not another, as the term "healthy fats" does. Similarly, *Walter v. Hughes Communications, Inc.*—another case Long cites—held that "typical," although seemingly vague, was an actionable term in the context of measuring quantifiable internet speeds, 682 F. Supp. 2d 1031, 1043-44 (N.D. Cal. 2010), whereas here, whether something "helps" or not is not reasonably quantifiable. Finally, Long misreads *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010), by stating that the court "refus[ed] to dismiss the plaintiff's claim for lack of an alleged misrepresentation despite noting that the term 'healthy' . . . was 'difficult, if not impossible, to measure concretely.'" Opp'n at 7. On the contrary, the court *did* dismiss all claims, albeit without prejudice, and stated that the term "healthy" must be viewed in context to see whether "the packaging is misleading." *Yumul*, 733 F. Supp. 2d at 1129. As discussed above, Long does not provide any context in which the challenged statement here is wrong. None of the cases Long cites supports his argument that the defendants' statement is an actionable actual misrepresentation under the CLRA and he has failed to adequately allege that the defendants made any actual misrepresentation.

## 2. CLRA: Fraudulent Omission

Long adequately pleads that the defendants were "obliged to disclose" the alleged defect because they knew about it, or should have known about it, but did not disclose it. A defendant "is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Wilson*, 668 F.3d at 1141 (citing *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118 (Ct. App. 2006)). Citing *Daugherty v. American Honda Motor Company*, the Ninth Circuit said, "A manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Id*. Thus, a

10

complaint must plead with particularity "factual allegations showing any instance of physical injury or any safety concerns posed by the defect." *Daugherty*, 51 Cal. Rptr. 3d at 127 (Ct. App. 2006). Also, a plaintiff "must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss," *Wilson*, 668 F.3d at 1145, though "allegations of fraud based on information and belief [] may be relaxed with respect to matters within the opposing party's knowledge" so long as they "state the factual basis for the belief," *Neubronner*, 6 F.3d at 672. A plaintiff can also survive a motion to dismiss if he plausibly pleads that the defendant "should have known" about the defect. *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379, at *18-19 (N.D. Cal. August 10, 2011).

Here, the defendants have a duty to disclose defects in the QT Buckles because car seats relate to safety concerns, a fact that Long sufficiently alleges. *See, e.g.*, FAC ¶ 6. Further, Long sufficiently alleges that the defendants "knew or should have known" of the defects at the time of sale due to the complaints to the NHTSA from before and after his purchase, as well as consumer complaints directly to the defendants, to which the defendants responded.[3] FAC ¶¶ 34, 35, 36, 38. Long also claims, on information and belief, that the defendants knew about the defects through "pre-release testing data," "testing conducted in response to [] complaints," "return and exchange data, among other internal sources of aggregate information." FAC ¶ 38. While Long does not state the factual basis for his belief that data, testing, and other "internal sources of aggregate information" gave the defendants knowledge of the defect, Graco told the NHTSA that it "has been keenly aware of the issue being investigated by NHTSA," that is, "the unlatching issue with respect to the specific model car seats alleged [in the FAC] that had the QT Buckle design." FAC ¶ 43; Graco-NHTSA Response 3. Though Graco does not say when it became "keenly aware" of the defects, the FAC reasonably infers that the NHTSA complaints put it on notice. Long adequately pleads "facts raising a plausible inference that [the defendants] knew, *or by the exercise of reasonable care should have known*, of the defect." *Kowalsky*, 2011 U.S. Dist. LEXIS 89379, at *11 (emphasis added).

---

[3] As noted above, Long need only allege the defendants' knowledge generally. FED. R. CIV. P. 9(b).

United States District Court
Northern District of California

Additional allegations support Long's contention that the defendants knew or should have known about the defects at the time of his purchases. The FAC alleges that five NHTSA complaints pre-date Long's first purchase of class car seats, and 22 pre-date his second purchase of class car seats. FAC ¶ 40. Three of the complaints that pre-date Long's first purchase state, among other things, that the buckles "GETS STUCK . . . EVERY TIME I USE IT"; the buckle "JAMS AND THE BUCKLE WILL NOT OPEN"; and "THE CROTCH BUCKLE HAS GOTTEN STUCK TO WHERE I CAN NOT GET THE HARNESS OPEN WHILE MY CHILD IS IN THE SEAT."[4] FAC ¶ 36. Long alleges that "at all times during the relevant time period, Defendants would monitor NHTSA and various other websites." FAC ¶ 39. As *Wilson* recognized, an allegation that "Defendant has constantly tracked the National Highway Traffic Safety Administration database to track reports of defect[]" supports the conclusion "that a manufacturer was aware of a defect." 668 F.3d at 1146 (brackets and ellipses omitted). Indeed, Graco responded to two of the NHTSA complainants who filed their reports before Long's initial purchase, and who directly told Graco that their buckles would not open, by either sending a new harness or stating that it will inspect the seat itself. FAC ¶ 36. The FAC also alleges the existence of four consumer complaints on Amazon.com that pre-date Long's initial purchase. As one court held, "the fact that consumers complained of a defect both in third-party fora as well as directly to [the defendant]," in addition to other allegations, supports an inference of actual knowledge of the defect. *Kowalsky*, 2011 U.S. Dist. LEXIS 89379, at *12-13 (quotation marks omitted). The FAC adequately pleads that the defendants were aware or should have been aware of a defect, which they had an obligation to disclose, at the time of Long's purchases.

Long sufficiently pleads that the defendants knew or should have known about the harness

---

[4] Complaints logged with the NHTSA that pre-date Long's second purchase include statements such as: "My biggest concern is that if this happens during an emergency where we need to get [our son] out quickly, we won't be able to without cutting the belt material. I reported the incident to Graco this morning, and they are going to refund cost of the seat." (Oct. 2, 2011); "It was stuck so firmly that I could not undo it at all. My husband had to come rip it out with all his strength. . . . I called the company and they are sending a return label." (June 14, 2011); "It takes several minutes to get my child unbuckled from this seat. This is a safety hazard, especially in the event of an emergency. The buckle tongues are clean, so debris is not the issue. . . . The fact that the buckle tongue catches in the crotch buckle makes me worry that the buckle may not be secure in a crash." (November 18, 2010). FAC ¶ 36 (all-caps removed).

United States District Court
Northern District of California

1   buckle defects but nonetheless "actively concealed the existence and nature of the defects."  FAC

2   ¶ 48.  At no point, Long claims, did the defendants disclose the defects.  FAC ¶¶ 48, 49.  "To this

3   day, Defendants still have not notified Plaintiff or Class Members that the car seats suffer from

4   systemic defects that cause the harness buckle to malfunction," the FAC states.  FAC ¶ 48.  While

5   these allegations do not establish whether the defendants actually had knowledge of defects at the

6   time of Long's initial purchase, the issue here is whether Long has sufficiently alleged facts to

7   overcome a motion to dismiss.  Based on the allegations in the FAC, the Court finds that it did.

8          The defendants argue that Long has not alleged sufficient facts to show that they "actually

9   knew of a 'defect' with the buckle" at the time of sale.  Br. 10, 12.  Long, they argue, has not

10  pleaded any facts about what testing was done that showed that the seats were defective.  Br. at 11.

11  More importantly, the defendants point to both *Wilson*, 668 F.3d at 1147, and *Grodzitsky v. Am.*

12  *Honda Motor Co., Inc.*, No. 2:12-cv-1142-SVW, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19,

13  2013), as support for their argument that consumer complaints alone do not establish that the

14  defendants knew about a design defect.

15         The defendants are correct that Long's vague allegations about testing that they did do not

16  adequately "state the factual basis for their belief."  *Neubronner*, 6 F.3d at 672.  However, the

17  defendants are incorrect in arguing that Long's allegations of consumer complaints are

18  "insufficient" to sustain his complaint.  While *Wilson* noted that "[s]ome courts have expressed

19  doubt that customer complaints in and of themselves adequately support an inference that a

20  manufacturer was aware of a defect," it did not adopt those doubts expressed by two district

21  judges.  668 F.3d at 1147.  On the contrary, the Ninth Circuit found allegations of "customer

22  complaints concerning the defect three months before the plaintiff purchased" the defective

23  product and that a defendant "constantly tracked" the NHTSA database as providing a "strong[]

24  factual basis" for claims that were deemed "successfully allege[d]."  668 F.3d at 1146 (citations

25  omitted).  Here, Long points to consumer complaints in the NHTSA database, which he alleges

26  the defendants track and which pre-date his purchase by over a year.  FAC ¶¶ 36, 39.  In contrast,

27  the plaintiff in *Wilson* failed to show that the defendant was aware of a defect because, of the 14

28  complaints alleged, none stated its source, 12 were undated, and two were made two years after

United States District Court
Northern District of California

the plaintiff's purchase.  668 F.3d at 1148.  That is not the case here.  Further, *Grodzitsky* is inapposite because the plaintiff there alleged the existence of customer complaints of defects, many of which *post*-dated the plaintiffs' purchases and which "were all posted on a website that had no connection to Defendant."  2013 WL 690822, at *7.  Here, not only did the NHTSA complaints pre-date Long's purchase by a year, they were on a database that the FAC alleges the defendants track.  FAC ¶ 39.  Long sufficiently pleads that the defendants knew or should have known about the alleged defects.

The other cases the defendants cite do not support them.  Br. 11 n.4.  In *Baba v. Hewlett-Packard Co.*, No. C 09-05946-RS, 2011 WL 317650, (N.D. Cal. Jan. 28, 2011), the court stated that "[a]wareness of a few customer complaints . . . does not establish knowledge of an alleged defect."  *Id.* at *3.  There, the plaintiff could only point to three customer complaints posted on the defendant's website that pre-dated the plaintiff's purchase.  Here, however, Long has alleged that there were five complaints made to the NHTSA that pre-date his first purchase and 22 that pre-dating his second purchase.  FAC ¶ 40.  Those NHTSA complaints also reflect that customers complained to Graco directly and Graco responded to them.  These allegations are in addition to complaints on Amazon.com and Graco's own admission to the NHTSA that it was "keenly aware" of issues raised about its car seats.  In *Rice v. Sunbeam Prods.*, No. CV 12-7923-CAS, 2013 WL 146270, at *7 (C.D. Cal. Jan. 7, 2013), the court held that a vague allegation in the complaint of "numerous individual letters and communications sent by members of the Class" was not sufficiently particularized to show knowledge.  Here, Long has actually copied the actual complaints from the NHTSA database and Amazon.com onto his FAC.  FAC ¶¶ 36, 41.  Similar to *Rice*, *Berenblat v. Apple, Inc.*, held that complaints posted on the defendant's website "[b]y themselves [] are insufficient to show that [the defendant] had knowledge" of a defect and "merely establish the fact that some consumers were complaining."  Nos. 08-4969-JF, 2010 WL 1460297, at *9 (N.D. Cal. April 9, 2010).  In this case, however, among other allegations, Long points to complaints posted on the website of the NHTSA, which investigates safety issues:  this allegation more than merely establishes that "some consumers were complaining."  In any event, none of these cases are controlling and two were decided without the benefit of *Wilson*.  Long adequately

United States District Court
Northern District of California

14

pleads fraudulent omission under the CLRA.

**B.  Eighth Cause of Action:  Unfair Competition Law**

The Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  CAL. BUS. & PROF. CODE § 17200.  "Each of these three adjectives captures a separate and distinct theory of liability."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted).  The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  *Wilson*, 668 F.3d at 1140.

**1.  UCL: Fraudulent Prong**

Long states a claim under the UCL's "fraudulent" prong because he pleads with particularity that the defendants had a duty to disclose some fact but did not do so.  "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL."  *Daugherty*, 51 Cal. Rptr. 3d at 128.  "[I]n order to be deceived, members of the public must have had an expectation or an assumption about the matter in question."  *Id.* (quotation marks omitted).  "Surveys and expert testimony regarding consumer assumptions and expectations may be offered but are not required; anecdotal evidence may suffice."  *Clemens v. Daimlerchrysler*, 534 F.3d 1017, 1026 (9th Cir. 2008) (citing *Brockey v. Moore*, 131 Cal. Rptr. 2d 746, 756 (2003).  A UCL fraud claim "can be shown even without allegations of actual deception, reasonable reliance and damage."  *Daugherty*, 51 Cal. Rptr. 3d at 128.

As discussed above, Long already adequately pleaded under the CLRA that the defendants had a duty to disclose the safety-related defect in the class car seats' harnesses and QT Buckles but did not.  That suffices to support a claim under the "fraudulent" prong of the UCL.  As *Kowalsky v. Hewlett-Packard* explained, "the standard for deceptive practices under the fraudulent prong of the UCL applies equally to claims for misrepresentation under the CLRA."  771 F. Supp. 2d at 1162.  In addition, the FAC adequately pleads that consumers were "likely to be deceived" by the defendants' fraudulent omission because consumers have "an expectation or an assumption" that child car seats will work properly and not have safety flaws.  As the FAC says, "Reasonable consumers, like Plaintiff, reasonably expect that a child's car seat is safe, will function in a manner

15

that will not pose a safety hazard, and is free from defects." FAC ¶ 47. Indeed, the numerous NHTSA and Amazon.com complaints listed in the FAC provide ample "anecdotal evidence" of such expectations and assumptions. FAC ¶¶ 36, 41; *Clemens*, 534 F.3d at 1026 ("anecdotal evidence may suffice"). Long states a claim for relief under the "fraudulent" prong of the UCL because he has pleaded with particularity that the defendants had a duty to reveal some fact and did not do so.

### 2.  UCL:  Unfair Prong

Long states a claim under the UCL's "unfair" prong because he pleads with particularity that the alleged harm to him from the defendants' alleged conduct outweighs the utility of the conduct. "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." *Rubio*, 613 F.3d at 1204; *Davis v. Ford Motor Credit Co.*, 101 Cal. Rptr. 3d 697, 707 (Ct. App. 2009). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provisions." *Bardin*, 39 Cal. Rptr. 3d at 642, 645 (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 2d 439, 456 (Ct. App. 2000).

Long does not state a claim for relief under the first test, but he does under the second. Under the first test, a plaintiff must identify an actual policy based on a legal provision that the defendant violated. The FAC alleges that the defendants' conduct "was injurious to consumers, offended public policy, and was unethical and unscrupulous," and thus violated "consumer protection and unfair competition laws in California and other states." FAC ¶ 139. However, Long fails to "tether" his claim to any "specific constitutional, statutory, or regulatory provision" except for a vague allusion to "consumer protection and unfair competition laws." *Bardin*, 39 Cal. Rptr. 3d at 642, 645. As *Twombly* dictates, "a formulaic recitation of the elements of a cause of action will not do" to survive a motion to dismiss. 550 U.S. at 555. A "formulaic recitation" is precisely what Long provides here. Thus he fails to state a claim for relief under this test.

United States District Court
Northern District of California

With regard to the second test, the Ninth Circuit observed that the balancing test for unfairness under the UCL "is currently in flux among California courts." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012). Although courts have not definitively decided the parameters of how to apply the balancing test, the Ninth Circuit in *Davis v. HSBC Bank Nevada* examined the extent to which the defendant caused, or the plaintiff contributed to, the alleged harm and the extent to which any harm is offset by the defendant's justification for its actions. *Id.* at 1170. Here, Long alleges that he complained about the defect in his initial class car seat and received a replacement buckle. FAC ¶ 53. After he was in a car accident, Long bought the same model car seat because he allegedly "believed that the issues he had with the first car seat may have been unique to that specific car seat" and because his insurance company required him to do so to receive reimbursement. FAC ¶ 54. Long does not appear to have caused, or contributed to, the alleged harm, i.e., having a defective harness and QT buckle. Also, the gravity of the alleged harm—that children cannot be quickly removed from the class car seats in case of an emergency—is great. On the other hand, there would be no utility in the defendants' provision of a defective product or failure to notify consumers about the defect, and, taking the allegations in the FAC as true, there is no apparent justification for their alleged actions. Balancing the utility of the defendants' conduct against the gravity of the alleged harm, the unfairness scale weighs in Long's favor. Long states a claim for relief under the UCL's "unfair" prong.

### 3. UCL: Unlawful Prong

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty*, 51 Cal. Rptr. 3d at 128. Because Long pleads with particularity that the defendants made fraudulent omissions under the CLRA, he also states a claim under the UCL's "unlawful" prong. *See Baba*, 2011 WL 317650, at *7.

### C. First Cause of Action: False Advertising Law

Long fails to adequately plead a claim for relief under the False Advertising Law ("FAL"). The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." *Williams v. Gerber*, 552 F.3d at 938. The statute prohibits "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency

1   to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (brackets and

2   quotation marks omitted). "In determining whether a statement is misleading under the statute,

3   the primary evidence in a false advertising case is the advertising itself," and the "misleading

4   character of a given representation appears on applying its words to the facts." *Colgan v.

5   Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 46 (Ct. App. 2006) (citations and quotation

6   marks omitted). Here, as discussed above, Long does not point to any statement or advertising

7   that is false. Also as discussed above, the sole statement Long identifies—"5-point, front-adjust

8   harness helps you get baby in and out"—is not likely to mislead an "ordinary consumer acting

9   reasonably under the circumstances" and is not actionable. *Lavie v. Procter & Gamble Co.*, 129

10   Cal. Rptr. 2d 486, 498 (Ct. App. 2003). Thus, Long fails to state a claim under the FAL.

### D. Failure to Plead With Particularity

12   Long pleads with particularity the respective alleged conduct of each defendant, Graco and

13   Newell, with regard to his claims under the CLRA for fraudulent omission and under the UCL's

14   "fraudulent," "unfair," and "unlawful" prongs. In *Swartz v. KPMG LLP*, the Ninth Circuit held,

15   "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum,

16   identify the role of each defendant in the alleged fraudulent scheme." 476 F.3d at 765 (quotation

17   marks and brackets omitted). There, the court held that the complaint "patently" failed to meet the

18   requirements of Rule 9(b) because the complaint was "shot through with general allegations that

19   the 'defendants' engaged in fraudulent conduct but attributes specific misconduct only to" two of

20   the four defendants. *Id.* However, the court found that the complaint could be cured by

21   amendment so it reversed the district court's denial of leave to amend.

22   The allegations in the FAC are pleaded with sufficient particularity to put each defendant

23   on notice of the wrongdoing of which it is accused. Here, the defendants argue that Long's fraud

24   claims fail because he "refers to Newell and Graco collectively as 'Defendants' without

25   distinguishing which particular defendant is responsible for each alleged element of conduct." Br.

26   12-14; Reply 6. In rebuttal, Long argues that there are no "vague or conflicting" allegations, and

27   "where conduct is attributed to only one defendant, Plaintiff pleads that allegation only with

28   respect to the applicable defendant." Opp'n 16. He also points to examples where he

United States District Court
Northern District of California

distinguishes Graco's actions from those of Newell's in the FAC and says that "[t]he fact that many of the other allegations concern the conduct of both defendants does not destroy the particularity that is pleaded with respect to each of them." Opp'n 16-17. Long's explanation that conduct attributed to "Defendants" refers to both Graco and Newell is reasonable and plausible. Whether Graco or Newell did or did not in fact engage in some act is not an issue for consideration on a motion to dismiss. The relevant issue is whether the FAC pleads with particularity the conduct of which each defendant is accused, sufficiently providing each with adequate notice of Long's claims, and Long's FAC has done so here.

## II.     BREACH OF WARRANTY CLAIMS[5]

### A.  Third Cause of Action:  Breach of Express Warranty Under Song-Beverly Consumer Warranty Act

Long fails to adequately plead that the defendants breached an express warranty under the Song-Beverly Consumer Warranty Act ("SBCWA"). "In order to plead a cause of action for breach of express warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 229 Cal. Rptr. 605, 608 (Ct. App. 1986); *see also Tomek v. Apple, Inc.*, No. 2:11-cv-02700-MCE, 2012 WL 2857035, at *6 (E.D. Cal. July 11, 2012); *Frisby-Cadillo v. Mylan, Inc.*, No. C 09-05816-SI, 2010 WL 1838729, at *4 (N.D. Cal. May 5, 2010).

Here, Long alleges that the defendants, "through advertising, represented, warranted and promised that class car seats would, among other things, permit the buckling and unbuckling of children from their car seats, would perform as intended, were free from defects, were fit for their ordinary purpose, and that the class car seats and their QT Buckle 'helps you get baby in and out.'" FAC ¶ 98. Long also alleges that "[t]hrough print, product package, internet, and other forms of advertising, Defendants have warranted and promised the class car seats as free from defects and suitable for their intended use." FAC ¶ 4. But Long has not "allege[d] the exact terms

---

[5] Long makes a single reference to a Limited Warranty that the Defendants allegedly offered. FAC ¶ 118. However, because Long does not plead additional facts about the Limited Warranty, nor does he claim that the Defendants breached it, there is no need to address it.

United States District Court
Northern District of California

of the warranty" that the defendants breached.  Without "pleading exact terms as required by California law," Long has "not met the pleading requirement" under Rule 8.  *Blennis v. Hewlett-Packard Co.*, No. C 07-00333-JF, 2008 WL 818526, at *2 (N.D. Cal. March 25, 2008).  In addition, California law defines an "express warranty" as a "written statement," CAL. CIV. CODE § 1791.2(a), and Long does not point to a single written statement except for the "helps you get baby in and out" statement.  Since the Court found that statement to be puffery, it "cannot support liability under a claim for breach of warranty."  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009).  And because Long does not identify the "exact terms" of any warranty, it follows that Long also "ha[s] not identified any specific warranty provision upon which he allegedly relied."  *Id.*  Long thus fails to state a viable claim under the SBCWA because he fails to sufficiently plead the exact terms of a warranty.

**B.  Fifth Cause of Action:  Breach of Express Warranty Under California Commercial Code**

Long fails to adequately plead that the defendants breached an express warranty under the California Commercial Code.  Under California Commercial Code § 2313, California law applies a three-step inquiry:  "First, the court determines whether the seller's statement amounts to 'an affirmation of fact or promise' relating to the goods sold.  Second, the court determines if the affirmation or promise was 'part of the basis of the bargain.'  Finally, if the seller made a promise relating to the goods and that promise was part of the basis of the bargain, the court must determine if the seller breached the warranty."  *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) (citations omitted); *see also Elias*, 903 F. Supp. 2d at 849; *Weinstat v. Dentsply Intern., Inc.*, 103 Cal. Rptr. 3d 614, 626 (Ct. App. 2010).

As discussed above, Long fails to identify any statement from the defendants amounting to "an affirmation of fact or promise" that is actionable.  He repeats the same allegations in his FAC here that he pleaded for breach of express warranty under the SBCWA and again asserts that they constitute express warranties.  *See* FAC ¶¶ 4, 98, 99.  However, "vague references to 'product advertising' as a basis for the express warranty claim" do not meet the first element of the *McDonnell Douglas* inquiry because they "are non-actionable puffery, and do not constitute an

20

express warranty on which a reasonable consumer could rely." *Castaneda v. Fila USA, Inc.*, No. 11-CV-1033-H (BGS), 2011 WL 7719013, at *4 (S.D. Cal. August 10, 2011). Absent a properly alleged affirmation or promise, Long is unable to meet the other two steps of the inquiry. Thus, he fails to adequately allege a breach of express warranty under the California Commercial Code.

**C. Fourth Cause of Action: Breach of Implied Warranty of Merchantability Under Song-Beverly Consumer Warranty Act**

Long adequately pleads a breach of implied warranty of merchantability under the SBCWA. Under California Law, unless disclaimed, the warranty of merchantability is implied in every sale of consumer goods at retail. CAL. CIV. CODE § 1792. "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 289 (Ct. App. 2009) (citation omitted). "Such fitness is shown if the product is in safe condition and substantially free of defects." *Id.* (citation and quotation marks omitted). "The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale." *Id.* at 290-91.

Here, as Long alleges, the class car seats are not fit because they are not "in safe condition [or] substantially free of defects." Instead, the class car seats—which are intended for use by children—have harnesses with buckles that are either "unreasonably difficult to unlatch" or impossible to unlatch. FAC ¶ 33. Some parents had to pull their children through still-buckled harnesses, and others "had to cut the harness to remove their children." FAC ¶ 34. Long himself had to use a knife to be able to free his son from being buckled. FAC ¶ 53. Long alleges that these defects "pose an unreasonable safety hazard to consumers and/or their children because in the event of a vehicle accident it may be imperative to remove the child from the seat belt as quickly as possible to avoid further injury or death." FAC ¶ 6. Further, "it may be imperative to remove the child from the car seat to avoid injury or death such as if the car becomes submerged in water, if the car is on fire, or if the child is suffering a medical emergency that necessitates removal from the car seat." FAC ¶ 6. Indeed, the defects are of such concern that the ODI has "upgraded its investigation" from its initial investigation. FAC ¶ 45. Based on these allegations, Long has sufficiently pleaded that the class car seats are not fit for their "ordinary purpose"

because they are unsafe and defective.  *Mexia*, 95 Cal. Rptr. 3d at 289.

      The defendants argue that Long fails to sufficiently allege a breach of the implied warranty of merchantability because Long does not allege that his car seat failed to serve its ordinary purpose," which is to "provide adequate protective restraint for his child while riding in a car." Br. 21.  The defendants point to the fact that Long's initial class car seat apparently served as an adequate restraint for Long's son when Long had his car accident.  Reply 10.  However, Long does not merely claim the class car seats do not provide "adequate protective restraint"—he also claims that, because of their difficulty in unlatching, the class car seats pose an actual danger to children who cannot be released during an emergency, for example, when a car is on fire or submerged under water.  FAC ¶ 6.  Consumers do not merely expect a car seat to serve its bare-minimum purpose, but rather, "reasonably expect that a child's car seat is safe, will function in a manner that will not pose a safety hazard, and is free from defects."  FAC ¶ 47.  In *Isip v. Mercedes-Benz USA, LLC*, the California Court of Appeal "reject[ed] the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability."  65 Cal. Rptr. 3d 695, 700 (Ct. App. 2007).  Here, the mere fact that a child car seat keeps a child strapped in does not mean that it is fit for its intended purpose—reasonable consumers would also expect that they would be able to quickly unlatch the harness or buckle in case of an emergency, just as they would expect a vehicle's door to easily open in case of an emergency in addition to "provid[ing] transportation from point A to point B." Long adequately pleads a breach of implied warranty of merchantability under the SBCWA.

    **D.  Sixth Cause of Action:  Breach of Implied Warranty of Merchantability Under California Commercial Code**

      Long fails to adequately plead a breach of implied warranty of merchantability under the California Commercial Code because he is not in privity with the defendants and he does not qualify for an exception to the privity rule.  As the Ninth Circuit held, "Under California Commercial Code section 2314 . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant."  *Clemens*, 534 F.3d at 1023; *see also Paramount Farms Intern. LLC v. Ventilex B.V.*, 500 F. App'x. 586, 588 (9th Cir. 2012) ("Vertical privity . . .

United States District Court
Northern District of California

is required to sustain an implied warranty claim in California.").  "A buyer and seller stand in privity if they are in adjoining links of the distribution chain."  *Clemens*, 534 F.3d at 1023 (9th Cir. 2008).  "Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer."  *Id.*  Two exceptions to this rule exist:  (1) "when the plaintiff relies on written labels or advertisements of a manufacturer," and (2) "where the end user is an employee of the purchaser."  *Id.* at 1024.  Although the Ninth Circuit recognized that "state courts have split on this privity question" and "the requirement may be an archaism in the modern consumer marketplace," it stated that "a federal court sitting in diversity is not free to create new exceptions to it."  *Id.*  Thus, "[a] lack of vertical privity requires the dismissal of [] implied warranty claims."  *Id.*

Here, Long alleges that he purchased his class car seats from a Babies "R" Us retail store.  FAC ¶¶ 4, 51.  Therefore, he is not in privity with the defendants.  In addition, neither exception in *Clemens* applies to him:  as discussed above, Long fails to allege any written labels or advertisements on which he can reasonably rely, and he does not allege that he is an employee of a purchaser—in this case, that he is an employee of Babies "R" Us.  Accordingly, Long fails to adequately plead a breach of implied warranty of merchantability under the California Commercial Code.

Long argues that he should be able to bring a claim for breach of implied warranty of merchantability under the California Commercial Code because "California courts . . . have recognized an exception to [the privity] requirement where a plaintiff-consumer is an intended third-party beneficiary of a contract for sale of a good between a manufacturer and a retailer." However, the Ninth Circuit does not recognize such an exception under California law, and the Court follows *Clemens*.  Although Long identifies several district court cases that allegedly allowed a third-party beneficiary exception, those cases are not binding on the Court whereas *Clemens* is.  Long therefore fails to adequately plead a breach of implied warranty of merchantability under the California Commercial Code.

**E.  Seventh Cause of Action:  Breach of Implied Warranty Under Magnuson-Moss Warranty Act**

Long adequately pleads a right to relief for breach of implied warranty under the Magnuson-Moss Warranty Act ("MMWA").  The MMWA "creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty:  A consumer who is damaged by the failure of a warrantor to comply with any obligation under a written warranty may bring suit for damages and other legal and equitable relief in an appropriate district court of the United States."  *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005) (citing 15 U.S.C. § 2310(d)(1)(B)) (ellipses and brackets omitted).  The MMWA also creates a federal private cause of action based on breach of an implied warranty.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009); *Daugherty*, 51 Cal. Rptr. 3d at 124.  "The substantive elements are the same under the Song-Beverly Act and Magnuson-Moss Act."  *Birdsong*, 590 F.3d at 958 n.2.  "[D]isposition of the state law warranty claims determines the disposition of the Magnuson–Moss Act claims."  *Clemens*, 534 F.3d at 1022.

Here, because the Court finds that Long adequately pleads a breach of implied warranty under the SBCWA, he therefore adequately pleads a breach of implied warranty under the MMWA as well.

## CONCLUSION

Because Long fails to adequately plead the following claims, but additional pleading may cure their defects, the Court GRANTS the defendants' motion to dismiss Long's First Cause of Action for violation of the FAL; Second Cause of Action for actual misrepresentation under the CLRA; Third Cause of Action for breach of express warranty under the SBCWA; Fifth Cause of Action for breach of express warranty under the California Commercial Code; and Sixth Cause of Action for breach of implied warranty under the California Commercial Code WITH LEAVE TO AMEND.

Because Long adequately pleads the following claims, the Court DENIES the defendants' motion to dismiss Long's Second Cause of Action for fraudulent omission under the CLRA; Fourth Cause of Action for breach of implied warranty under the SBCWA; Seventh Cause of

Action for breach of implied warranty under the MMWA; and Eighth Cause of Action for violation of the "fraudulent," "unfair," and "unlawful" prongs of the UCL.

Long is ORDERED to file any amended complaint within 30 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 26, 2013



_____
WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

25