1  Jordan L. Lurie (SBN 130013)
   Jordan.Lurie@capstonelawyers.com
2  Tarek H. Zohdy (SBN 247775)
   Tarek.Zohdy@capstonelawyers.com
3  Cody. R. Padgett (SBN 275553)
   Cody.Padgett@capstonelawyers.com
4  Capstone Law APC
   1840 Century Park East, Suite 450
5  Los Angeles, California 90067
   Telephone:     (310) 556-4811
6  Facsimile:     (310) 943-0396

7  Attorneys for Plaintiff Seth Long

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 SETH LONG, individually, and on behalf of other members of the general public similarly situated, | Case No.: 13-cv-01257-WHA |
| 11 | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| 12 Plaintiff, | |
| 13 vs. | (1) Violation of the Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*); |
| 14 GRACO CHILDREN'S PRODUCTS INC., a Delaware corporation; NEWELL RUBBERMAID INC., a Delaware corporation, | (2) Breach of Implied Warranty (Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*); |
| 15 | |
| 16 | (3) Breach of Implied Warranty (Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; and |
| 17 Defendants. | |
| 18 | (4) Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*). |
| 19 | |
| 20 | **Jury Trial Demanded** |

21

22

23

24

25

26

27

28

1    Plaintiff hereby files his Second Amended Complaint to conform to the Court's Order on

2  Defendants' Motion to Dismiss Plaintiff's First Amended Complaint sustaining Plaintiff's

3  Causes of Action for: (1) Violation of the Consumers Legal Remedies Act (Cal. Civ. Code

4  §§ 1750, *et seq*.); (2) Breach of Implied Warranty (Song-Beverly Consumer Warranty Act, Cal.

5  Civ. Code §§ 1792 and 1791.1, *et seq*.); (3) Breach of Implied Warranty (Magnuson-Moss

6  Warranty Act, 15 U.S.C. § 2301); and (4) Violation of Unfair Competition Law (Cal. Bus. &

7  Prof. Code §§ 17200, *et seq*.).   Plaintiff Seth Long ("Plaintiff") individually and on behalf of all

8  others similarly situated, brings this action for damages and injunctive relief against Defendants

9  Graco Children's Products Inc. and Newell Rubbermaid Inc. (collectively, "Defendants"), and

10  states:

11                              **INTRODUCTORY STATEMENT**

12    1.    Plaintiff brings this action individually and on behalf of all other similarly

13  situated California consumers ("Class Members") who purchased, within the applicable statutes

14  of limitations period, a Graco car seat that was manufactured between January 1, 2009 and

15  October 2012 and was equipped with a "QT Buckle" (referred to herein as the "class car seats"

16  or "the products").   These class car seats include, without limitation, any of the following

17  models:

18                **Nautilus**

19                **Nautilus Elite**

20                **Argos 70**

21                **MyRide 65**

22                **MyRide 65 with Safety Surround**

23                **MyRide 70**

24                **Comfort Sport**

25                **Classic Ride 50**

26                **Size4Me**

27                **Toddler SafeSeat Step 2**

28                **CozyCline**

**SmartSeat**

**Snugride**

**Snugride 30**

**Snugride 32**

**Snugride 35**

**Infant SafeSeat Step 1**

**Snugride Click Connect 40**

2.     The crux of this action concerns the advertisement and sale of defective child car seats by Defendants under the Graco name brand.  The class car seats are defective in that the harness buckle, which is a component of the car seats (the "QT Buckle"), is either unreasonably difficult to unlatch, or simply will not unlatch.  Numerous consumers have reported that they had to either struggle excessively to unlatch their child from the class car seats, had to cut the harness in order to remove their child from the car seats, had to manipulate their child out of the car seat while the harness was still buckled, or simply stopped using the car seat because it would not unbuckle.  While Defendants knew that the class car seats contained the defect, Defendants failed to disclose the defect to Plaintiff and Class Members.

3.     The alleged defect includes the inability of the buckles to de-latch, even when dirty.  Reasonable consumers expect that children's car seats will get dirty and that even if some dirt accumulates in the latch, the buckles will open.  To the extent that Defendants contend that the buckle malfunction is due to foreign material accumulating in the buckle and consumers' failures to clean the buckle apparatus, Defendants failed to disclose, adequately or at all, material information regarding the necessary cleaning procedures for the car seats.

4.     Through print, product package, internet, and other forms of advertising, Defendants have warranted and promised the class car seats as free from defects and suitable for their intended use.  Moreover Defendants have advertised one feature of the class car seats as follows: the "5-point, front-adjust harness helps you get baby in and out."

5.     However, Defendants knew or should have known that the class car seats had one or more design and/or manufacturing defects that they failed to disclose and which result in

1   the failure of the harness buckle to operate as intended.  The defects impede the ability of, or

2   otherwise prevent, the safe and timely removal of the child from the car seat.

3         6.     The defects pose an unreasonable safety hazard to consumers and/or their

4   children because in the event of a vehicle accident it may be imperative to remove the child

5   from the seat belt as quickly as possible to avoid further injury or death.  According to the

6   National Highway Transportation Safety Administration ("NHTSA") "[c]ar crashes are the

7   number one killer of children 1 to 12 years old in the United States."  Moreover, for other

8   reasons, it may be imperative to remove the child from the car seat to avoid injury or death such

9   as if the car becomes submerged in water, if the car is on fire, or if the child is suffering a

10  medical emergency that necessitates removal from the car seat.

11        7.     Defendants knew or should have known about the defects.  Despite Defendants'

12  knowledge that their car seats were defective, Defendants sold and continued to sell their car

13  seats to unwitting consumers including Plaintiff and Class Members, who have relied on

14  Defendants' advertising in deciding whether to purchase, or pay a premium price for, the class

15  car seats.  Despite the class car seats being defective, Defendants have failed and continue to fail

16  to refund Plaintiff and Class Members' purchases of the class car seats, all to Defendants' profit

17  and at the expense of innocent consumers.

18        8.     Because Defendants will not notify Class Members that the class car seats are

19  defective, Plaintiff and Class Members and/or their children are subjected to dangerous

20  conditions.

21        9.     Defendants knew about and concealed the defects in every class car seat, along

22  with the attendant dangerous safety hazards, from Plaintiff and Class Members, at the time of

23  sale and thereafter.  In fact, instead of repairing the defects in the class car seats, Defendants

24  refused to acknowledge their existence.

25       10.    If Plaintiff and the Class Members knew about these defects at the time of sale,

26  Plaintiff and Class Members would not have purchased the class car seats or would have paid

27  less for them.

28

11.     Defendants' unfair and deceptive business practices have caused Plaintiff and other consumers to spend millions of dollars on the purchase and/or premium price for the class car seats, which they would otherwise not have spent, had they known that the class car seats were defective.  Plaintiff, on behalf of himself and all other similarly situated persons, seeks actual and/or compensatory damages, restitution and equitable relief, costs and expenses of litigation, attorneys' fees, and all other available relief for Plaintiff and all other members of the Class described more fully below.

**THE PARTIES**

12.     Plaintiff SETH LONG is a resident of Ventura, California in Ventura County.

13.     Defendant GRACO CHILDREN'S PRODUCTS INC., was and is, upon information and belief, a Delaware limited liability company, and at all times hereinafter mentioned, a retailer, manufacturer, and/or seller of products in this county, the State of California, and the various states of the United States of America.

14.     Defendant NEWELL RUBBERMAID INC., was and is, upon information and belief, a Delaware limited liability company, and at all times hereinafter mentioned, a retailer, manufacturer, and/or seller of  products in this county, the State of California, and the various states of the United States of America.

15.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, GRACO CHILDREN'S PRODUCTS INC., and/or NEWELL RUBBERMAID INC., each acting as the agent for the other, with legal authority to act on the other's behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

16.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions of each and all other Defendants in proximately causing the damages herein alleged.

17.     At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided

1 and abetted the acts and omissions as alleged herein.

2 **JURISDICTION AND VENUE**

3 18. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d). The

4 aggregated claims of the individual Class Members exceed the sum or value of $5,000,000,

5 exclusive of interests and costs, and this is a class action in which more than two-thirds of the

6 proposed plaintiff class, on the one hand, and Defendants, on the other hand, are citizens of

7 different states.

8 19. This Court has jurisdiction over all Defendants because they are registered to

9 conduct business in California, have sufficient minimum contacts in California, or otherwise

10 intentionally avail themselves of the California market through the promotion, sale, marketing

11 and distribution of their products so as to render the exercise of jurisdiction over them by

12 California courts consistent with traditional notions of fair play and substantial justice.

13 Moreover, Defendants' wrongful conduct (as described herein) foreseeably affects consumers

14 in California.

15 20. Venue is proper in this Court because, upon information and belief, Defendants

16 reside, transact business, or have offices in this district and the acts and omissions alleged

17 herein took place in this district.

18 21. Defendants, through their business of promoting, selling, marketing and

19 distributing the class car seats, have established sufficient contacts in this district.

20 22. In addition, a substantial part of the events or omissions giving rise to these

21 claims and a substantial part of the property that is the subject of this action are in this district.

22 Plaintiff's Declaration, as required under California Civil Code section 1780(d) but not

23 pursuant to *Erie* and federal procedural rules, which reflects that a substantial part of the

24 events or omissions giving rise to the claims alleged herein occurred, or a substantial part of

25 property that is the subject of this action, is situated in this district, is attached as Exhibit A.

26 23. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

27 **FACTUAL ALLEGATIONS**

28 24. Defendant NEWELL RUBBERMAID, INC. ("Newell") is the parent

corporation of GRACO CHILDREN'S PRODUCTS INC., and describes itself as a global

marketer of consumer and commercial products that touch the lives of people where they

work, live and play.  Newell's products are marketed under a strong portfolio of brands,

including Rubbermaid®, Graco®, Aprica®, Levolor®, Calphalon®, Goody®, Sharpie®,

Paper Mate®, Dymo®, Parker®, Waterman®, Irwin® and Lenox®.  Newell's multi-product

offering consists of well-known, name-brand consumer and commercial products in three

business segments: Home & Family; Office Products; and Tools, Hardware & Commercial

Products.

25.     With respect to its offering of baby and parenting products, Newell markets and

sells baby and parenting products through its Baby & Parenting business segment, which

designs and distributes infant and juvenile products such as swings, highchairs, car seats,

strollers and play yards, including, on information and belief, the class car seats at issue in this

action.  Newell then primarily sells its products under the trademarks Graco®, Aprica®, and

Teutonia®.  Newell's Baby & Parenting segment sources substantially all of its products, and

primarily markets its products directly to mass merchants and department stores.

26.     GRACO CHILDREN'S PRODUCTS INC. ("Graco") was formed in

Philadelphia, Pennsylvania, in 1942, as "Graco Metal Products."  Over a decade later they

produced their first infant product, the "Graco Swingomatic" which enjoyed huge commercial

success and established Graco as a household name.  As Graco grew, they expanded their

product line to include car seats.

27.     Today, Graco makes a variety of products for infants and toddlers including car

seats, strollers, play yards, highchairs, and monitors.  Graco markets, advertises and sells its

products, including, on information and belief, the class car seats at issue in this action, to the

consuming public online and via other online stores and retailers such as Amazon, Babies "R"

Us, and Target.

28.     Defendants sell dozens of different car seat models including the "Smart Seat,"

"Argos," "My Ride," and "Nautilus" lines.

29.     This action concerns all car seats designed, marketed, distributed, and sold by

1  Defendants under the Graco brand name which use a particular seat harness buckle called the

2  "QT Buckle."

3      30.    A picture depicting the "QT Buckle" which is a component of every class car

4  seat is set forth below(not actual size):



16      31.    Defendants designed, distributed, and/or used the QT Buckle for the model car

17  seats alleged during the Class Period and at least from 2009-2012.  On information and belief,

18  Defendants sold millions of car seats with the QT Buckles nationwide during the Class Period.

19      32.    Through print, product packaging, internet, and other forms of advertising,

20  Defendants have warranted and promised the class car seats as free from defects and suitable for

21  their intended use.  For example, Defendants have advertised one feature of the car seats as

22  follows: the "5-point, front-adjust harness helps you get baby in and out."

23      32.    However, Defendants knew or should have known that the class car seats had

24  one or more design and/or manufacturing defects that they failed to disclose and which result

25  in the failure of the harness buckle to operate as intended.  The defects impede the ability of,

26  or otherwise prevent, the safe and timely removal of the child from the car seat.

27      33.    By October 15, 2012, the Office of Defects Investigation ("ODI") of NHTSA

28  opened an investigation of the class car seats at issue in this First Amended Complaint

("Complaint") as a result of consumer complaints that the harness buckles were unreasonably difficult to unlatch, or not able to be unlatched at all.

34.     ODI initiated an investigation based on 25 reports from consumers alleging difficulty in opening the harness buckles in 2009-2011 Graco My Ride and Nautilus child seats. Thus far, the ODI has received upwards of 85 reports alleging the same problem.  These reports include five that pre-dated Plaintiff's purchase of his first class car seat on or about March of 2010 and twenty-two reports that pre-dated Plaintiff's purchase of his second class car seat on or about November of 2011.  Among the reports, nine of the complainants could not unlatch the buckle at all.  Of those, three complainants had to cut the harness to remove their children, and the other six managed to remove their children by pulling them through the still buckled harness.   After evaluating additional complaints with other Graco car seat models, ODI expanded the investigation to include all Graco car seats equipped with the same model buckles as the My Ride and Nautilus.

35.     Hundreds, if not thousands, of purchasers of the class car seats have experienced these unbuckling problems.  Complaints filed by consumers with NHTSA demonstrate that the defect is widespread and dangerous.

36.     The following are some safety complaints relating to the car seats submitted to NHTSA (spelling and grammar mistakes remain as found in the original, bolded for emphasis):

| Date of Incident | Summary |
| --- | --- |
| February 17, 2009 | WE BOUGHT THE GRACO NAUTILUS CAR SEAT FROM BABIES R US ABOUT A MONTH AGO AND OVER THE PAST WEEK **THE CROTCH BUCKLE WILL STICK. THERE ARE NO DIRT OR DEBRIS IN THE BUCKLE.** ONE SIDE UNBUCKLES SOMETIMES, BUT THE OTHER SIDE WON'T AND I HAVE REBUCKLE THE ONE SIDE AND PUSH DOWN REALLY HARD AND THEN MAYBE IT WILL UNLATCH |

| | | |
|---|---|---|
| 1 | | WHEN I PUSH ON THE LEVER. *TR |
| 2 | February 21, 2009 | I BOUGHT THE SEAT AND **THE FIRST TIME I USED IT THE** |
| 3 | | **BUCKLE (CROTH STRAP) GETS STUCK. IT HAPPENES** |
| 4 | | **EVERY TIME I USE IT AND I HAVE TO PLAY WITH IT TO** |
| 5 | | **COME UNDONE.** I AM CALLING TO GET A NEW CROTCH |
| 6 | | STRAP/BUCKLE. *TR |
| 7 | February 27, 2009 | **THE CROTCH BUCKLE ON THE CARSEAT JAMS. YOU** |
| 8 | | **CAN PUSH THE RED RELEASE BUTTON AND THE** |
| 9 | | **BUCKLE WILL NOT OPEN...OTHER TIMES YOU CAN** |
| 10 | | **PUSH THE RELEASE BUTTON AND ONE SIDE WILL** |
| 11 | | **RELEASE, BUT NOT THE OTHER.** WHEN THIS HAPPENS, |
| 12 | | YOU HAVE TO RE-BUCKLE THE SIDE THAT HAS RELEASED |
| 13 | | (IF ONE HAS), THEN PUSH BOTH SIDES INTO THE BUCKLE |
| 14 | | VERY FIRMLY, THEN ATTEMPT TO OPEN THE BUCKLE |
| 15 | | AGAIN. I'VE HAD TO TRY UP TO THREE TIMES BEFORE |
| 16 | | THE BUCKLE WILL RELEASE. THIS HAPPENS EVERY 3-4 |
| 17 | | USES AND IS HAPPENING MORE FREQUENTLY AS TIME |
| 18 | | GOES ON. GRACO WAS CONTACTED AND A WHOLE NEW |
| 19 | | HARNESS SYSTEM, INCLUDING A NEW CROTCH BUCKLE, |
| 20 | | IS BEING SENT FREE OF CHARGE. I WAS INSTRUCTED TO |
| 21 | | DISPOSE OF THE FAULTY BUCKLE. *TR |
| 22 | March 2, 2009 | 1. UNBUCKLING SON FROM RESTRAINT, **THE CROTCH** |
| 23 | | **BUCKLE GETS STUCK** 2. **MOSTLY EVERYTIME HE GETS** |
| 24 | | **OUT OF THIS SEAT** 3. NOTHING YET. *TR |
| 25 | November 10, 2009 | THE **CROTCH BUCKLE HAS GOTTEN STUCK TO WHERE** |
| 26 | | **I CAN NOT GET THE HARNESS OPEN WHILE MY CHILD** |
| 27 | | **IS IN THE SEAT.** THIS PROBLEM DOES NOT HAPPEN |
| 28 | | |

| | |
|---|---|
| | EVERY USE BUT HAS OCCASIONALLY HAPPENED SINCE I PURCHASED THE SEAT IN 2009. I CALLED GRACO AND THEY ASKED ME TO MAIL THEM BACK THE SEAT, SINCE THIS IS NOT A REPLACEABLE PART, AND THEY WILL INSPECT IT TO SEE IF THERE IS A DEFECT. *KB |
| April 17, 2010 | **THE BUCKLE (BETWEEN THE LEGS) GETS STUCK AND IT WILL TAKE UPWARDS OF 5 MINUTES JUST TO GET MY SON OUT OF HIS CAR SEAT!** IT IS HAPPENING ALMOST ONCE A DAY WHEN WE ARE MAKING MULTIPLE STOPS. ONE SIDE OF THE BUCKLE WILL GET STUCK AND THE OTHER SIDE WILL RELEASE AND I WILL HAVE TO REBUCKLE THE SIDE THAT RELEASED AND REPEAT THAT FOR A FEW MINUTES WHILE TRYING TO PULL THE STUCK SIDE OUT. *TR |
| October 13, 2010 | CPSC# I1130771A GRACO NAUTILUS (CAR SEAT) CONSUMER STATES THAT THE **BUCKLES STICK AND CHILD WOULD HAVE A CHANCE OF BEING STUCK IF TRYING TO GET OUT**. *LN THE CONSUMER ALSO STATED THE BUCKLES FREQUENTLY TWIST AND HAS BEEN AN ONGOING ISSUE. *JB |
| October 17, 2010 | HAVING A PROBLEM WITH BUCKLES OF A CHILDS CAR SEAT. NAME GRACO-NAUTILUS JULIA MODEL # 1769849 MANUFACTURED 03/2010. **THE BUCKLES ARE HARD TO UNBUCKLE** BOTH THE TOP AND BOTTOM ONES ON THE BABY. **HARD TO REMOVE BABY FROM SEAT IF THERE WAS A FIRE OR ACCIDENT**. COST $179.00. CURRENTLY USING THE TOP BUCKLES ONLY SINCE THE BOTTOM ONES |

| | | |
|---|---|---|
| | | ARE THE HARDEST TO UNDO. *TR |
| | November 16, 2010 | THE **CROTCH BUCKLE ON THE GRACO MYRIDE 65 CAR SEAT STICKS** WHEN TRYING TO PUSH DOWN THE RED RELEASE BUTTON TO GET A CHILD OUT OF THE SEAT. THIS COULD BE A **POTENTIALLY LIFE THREATENING PROBLEM IF THE BUCKLE STICKS WHILE A CAR IS ON FIRE OR IN THE WATER**. THE PROBLEM HAS BEEN **REPORTED TO GRACO** WHO HAVE YET TO DO ANYTHING ABOUT IT. *TR |
| | November 17, 2010 | WE BOUGHT A BRAND NEW GRACO MYRIDE65 IN JAN 2010. AFTER ABOUT 2 WEEKS WE STARTED TO REALLY NOTICE THE **CROTCH BUCKLE WOULD CATCH ON SOMETHING AND MAKE IT VERY DIFFICULT TO TAKE OUR CHILD OUT OF THE SEAT**. IT HAS GOTTEN WORSE WITH TIME AND IS NOW TO THE POINT WHERE IVE BEEN CLOSE TO CUTTING THE STRAP TO GET MY DAUGHTER OUT. IT STARTED HAPPENING JUST EVERY SO OFTEN, AND NOW HAPPENS JUST ABOUT EVERY TIME WE USE THE SEAT. I HAVE TRIED RINSING THE BUCKLE AND THE METAL PIECE WITH WARM SOAPY WATER AND THIS DOES NOTHING. I HAVE NOT CONTACTED GRACO YET TO SEE IF THEY WILL REPLACE THE BUCKLE. THAT IS SOMETHING I PLAN TO DO TODAY(11/17/10). *TR |
| | November 18, 2010 | THE LEFT BUCKLE TONGUE ON OUR GRACO NAUTILUS (MODEL #8J00GLX) STICKS IN THE CROTCH BUCKLE NEARLY EVERY SINGLE TIME WE USE THE SEAT. IT IS EXTREMELY DIFFICULT TO UNBUCKLE. **IT TAKES** |

| | |
|---|---|
| | **SEVERAL MINUTES TO GET MY CHILD UNBUCKLED FROM THIS SEAT. THIS IS A SAFETY HAZARD, ESPECIALLY IN THE EVENT OF AN EMERGENCY. THE BUCKLE TONGUES ARE CLEAN, SO DEBRIS IS NOT THE ISSUE.** IT FEELS LIKE THE METAL OF THE BUCKLE TONGUE IS CATCHING INSIDE THE BUCKLE. THE FACT THAT THE BUCKLE TONGUE CATCHES IN THE CROTCH BUCKLE ALSO MAKES ME WORRY THAT THE BUCKLE MAY NOT BE SECURE IN A CRASH. *TR |
| February 17, 2011 | NOTHING THAT I AM AWARE OF HAS CAUSED THIS PROBLEM WITH MY GRACO MYRIDE 65, IT HAPPENED ON ITS OWN. **THE CROTCH BUCKLE STICKS FREQUENTLY MAKING IT VERY DIFFICULT TO REMOVE MY CHILD FROM THE SEAT**. ALSO I HAVE FOUND CRACKS IN THE CROTCH BUCKLE CLIPS. GRACO HAS OFFERED TO REPLACE THE ENTIRE SEAT FOR ME FREE OF CHARGE. *TR |
| March 31, 2011 | NORMAL USE FOR A GRACO NAUTILUS MODEL 8J00MTX, MANUFACTURED 8-8-2008. NOTICED HAIRLINE CRACKS IN THE BUCKLING SYSTEM OF THE HARNESSING SYSTEM. ALSO, **HARNESSING SYSTEM AT BUCKLE POINT WOULD 'STICK' AND IT WOULD BE VERY DIFFICULT TO REMOVE, THEREFORE UNABLE TO TAKE CHILD OUT OF SEAT.** CALLED GRACO CUSTOMER SERVICE, THEY ARE SENDING OUT A COMPLETELY NEW HARNESSING SYSTEM FREE OF CHARGE. NONE ARE IN STOCK, SO WAITING FOR RESTOCKING, AND CANNOT USE THE SEAT |

SECOND AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| | | FOR NOW. CHILD IS USING HIS OLD CONVERTIBLE SEAT. *TR |
| | April 1, 2011 | I HAVE A GRACO MYRIDE 65 CARSEAT FOR MY CHILD. MODEL # 1756268, DOM 080409. RECENTLY THE CROTCH **BUCKLE HAS BEGUN TO STICK, NOT ALLOWING THE STRAPS TO BE RELEASED**. IT DOES NOT HAPPEN EVERY TIME THE SEAT IS USED, BUT IT IS BECOMING MORE FREQUENT. I HAVE EMAILED GRACO, BUT HAVE NOT GOTTEN A RESPONSE YET. *KB |
| | April 18, 2011 | MY SON'S GRACO MYRIDE 65 HAS HAD NUMEROUS ISSUES. ALMOST A YEAR AGO I HAD TO CALL AND THEY SENT OUT A REPLACEMENT BUCKLE SINCE THE ONE ON MY SON'S SEAT **WAS STICKING** AND TAKING ABOUT 5 MINUTES OF FIDDLING TO BE UNBUCKLED TO GET MY SON OUT. THIS PAST WEEKEND I PUT MY SON IN IT AND **THE BUCKLE COMPLETELY LOCKED UP**. I HAD TO UNTHREAD THE HARNESS TO GET HIM OUT. I CALLED GRACO AND THEY ARE REPLACING HIS SEAT FOR ME. *TR |
| | June 14, 2011 | MY SON'S GRACO MYRIDE 65 **WILL NOT UNLATCH AT THE CROTCH BUCKLE**. IT BEGAN STICKING A LITTLE ABOUT TWO WEEKS AGO. **LAST SATURDAY, IT WAS STUCK SO FIRMLY THAT I COULD NOT UNDO IT AT ALL**. MY HUSBAND HAD TO COME RIP IT OUT WITH ALL HIS STRENGTH. IT CONTINUES TO STICK AND BE VERY DIFFICULT TO UNLATCH. I CALLED THE COMPANY AND THEY ARE SENDING A RETURN LABEL AND I WILL SHIP THE WHOLE CAR SEAT BACK TO THEM AS IT IS A "NON- |

| | |
|---|---|
| | REPLACEABLE" PART. WHEN IT IS PICKED UP, I WILL CALL THEM AND THEY WILL SEND A NEW MYRIDE. I AM HAPPY THEY ARE REPLACING THE SEAT, BUT I REALLY WISH I WAS NOT WITHOUT A SEAT FOR MY SON FOR SEVERAL DAYS. *TR |
| June 20, 2011 | **CROTCH BUCKLE ON MY GRACO NAUTILUS (MANF. DATE 03 2009) IS STICKING AND DIFFICULT TO RELEASE.** *KB |
| July 6, 2011 | OUR GRACO MYRIDE 65 CARSEAT HAS A STICKY CROTCH BUCKLE THAT IS **VERY DIFFICULT TO UNDO** AT SOME TIMES. **IT WAS STUCK SO BADLY AT ONE POINT, I THOUGHT WE WERE GOING TO HAVE TO CUT THE STRAPS TO GET MY SON OUT OF THE SEAT. THIS ISSUE OCCURS ALMOST EVERY TIME WE USE THE SEAT**. SOMETIMES THE STICKING IS WORSE THAN AT OTHER TIMES. **WE HAVE CLEANED THE BUCKLE PER THE INSTRUCTIONS IN OUR OWNER'S MANUAL AND IT HAS NOT HELPED** WITH THE ISSUE. I HAVE ALSO CONTACTED GRACO CUSTOMER SERVICE AND WAS TOLD THAT THE BUCKLE IS NOT REPLACEABLE AND WAS OFFERED $40 TOWARDS THE PURCHASE OF A NEW CARSEAT, AS MY SEAT IS OUT OF THEIR ONE YEAR WARRANTY WINDOW. I WORRY THAT THE BUCKLE COULD FAIL IN THE EVENT OF AN ACCIDENT AND ONLY USE THE SEAT WHEN I ABSOLUTELY HAVE TO. *TR |
| August 19, 2011 | I HAVE THE GRACO MYRIDE 65 CAR SEAT, MY BABY CAN UNBUCKLE THE CHEST CLIP AND MANEUVER HIMSELF |

| | |
|---|---|
| | OUT OF THE SEAT, I HAD TO PULL OVER ON A RECENT TRIP BECAUSE HE WAS COMPLETELY OUT OF HIS CAR SEAT! I MAKE SURE IT IS POSITIONED CORRECTLY AND TIGHT ENOUGH BUT HE STILL CAN UNBUCKLE IT. THE **CROTCH CLIP ALSO WILL SOMETIME STICK WHEN TRYING TO UNBUCKLE IT AND HAVE TO PULL ON IT REALLY HARD BEFORE IT WILL FINALLY RELEASE**. *TR |
| October 2, 2011 | WE HAVE A GRACO MY RIDE 65 CONVERTIBLE CAR SEAT (MODEL 1770670) ON WHICH WE HAVE HAD TROUBLE WITH THE CENTER BUCKLE MECHANISM. ON THE DAY INDICATED, WE ATTEMPTED TO REMOVE OUR 20-MONTH OLD SON FROM THE SEAT, AND **THE CENTER RED RELEASE BUTTON WOULD NOT DEPRESS NO MATTER HOW MANY ATTEMPTS OR HOW HARD WE TRIED**. WE TRIED WIGGLING THE BUCKLE WHILE DEPRESSING, BUT NOTHING WORKED. WE THOUGHT WE WERE GOING TO HAVE TO CUT THE BELT MATERIAL TO GET HIM OUT, BUT WE FIGURED OUT A WAY TO UNHINGE THE BELT MATERIAL FROM THE REAR OF THE SEAT TO LOOSEN IT ENOUGH TO REMOVE OUR SON. **MY BIGGEST CONCERN IS THAT IF THIS HAPPENS DURING AN EMERGENCY WHERE WE NEED TO GET HIM OUT QUICKLY, WE WON'T BE ABLE TO WITHOUT CUTTING THE BELT MATERIAL**. I REPORTED THE INCIDENT TO GRACO THIS MORNING, AND THEY ARE GOING TO REFUND COST OF THE SEAT UPON THE RETURN OF THE DEFECTIVE CAR SEAT. *TR |

| October 15, 2011 | TL* THE CONTACT OWNS A GRACO COMFORT SPORT CHILD SEAT. THE CONTACT STATED THAT THE BUCKLE WHICH FASTENED THE HARNESS NEAR THE LEGS BECAME STUCK ON NUMEROUS OCCASIONS. **THE BUCKLE REQUIRED EXCESSIVE FORCE TO RELEASE THE HARNESS AND REMOVE THE CHILD FROM THE SEAT. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND REFERRED THE CONTACT TO NHTSA.** |
| --- | --- |
| October 30, 2011 | THE **HARNES BUCKLES WILL NOT UNLATCH AND CHILD IS STUCK IN THE SEAT**. *TR |
| November 18, 2011 | TL* THE CONTACT OWNS A 2009 GRACO NAUTILUS CHILD RESTRAINT SEAT, MODEL NUMBER 8J00VRV, MANUFACTURED ON APRIL 27, 2009 (N/A). THE CHILD SEAT WAS BEING UTILIZED IN A 2006 DODGE CARAVAN. THE CONTACT NOTICED THAT WHENEVER THE CHILD WAS POSITIONED IN THE CONVERTIBLE BOOSTER SEAT, THE **HARNESS BUCKLE FAILED TO OPEN OR UNLATCH** UNTIL AFTER SEVERAL ATTEMPTS WERE MADE. THE CHILD RESTRAINT SEAT WAS INSTALLED USING THE LATCH SYSTEM. THE CONTACT PLANNED TO NOTIFY THE MANUFACTURER OF THE MALFUNCTION. |
| March 8, 2012 | GRACO BECKETT CHILD SEAT **THE LATCH THAT THE SHOULDER STRAPS HOOKS INTO GETS STUCK AND UNABLE TO FREE CHILD** WHEN PUSHING BUTTON. I CARRY PLIERS IN THE CAR TO HELP GET IT UNSTUCK AND EVEN THAT IT IS HARD. IT OCCURS DAILY I CALLED |

| | |
|---|---|
| | THE COMPANY AND THEY SAID THAT THEY WILL SEND REPLACEMENT PARTS, IT HAS BEEN OVER A MONTH AND STILL NOTHING RECEIVED. I FIND IT VERY BAD IF I WAS IN AN ACCIDENT I OR SOMEONE ELSE HELPING WOULD BE UNABLE TO GET CHILD OUT IN A TIMELY MANNER DUE TO LATCH ERRORS. *TR |
| April 5, 2012 | MY SON WAS STUCK IN HIS GRACO MYRIDE 65 CAR SEAT. IT HAPPENED OUT OF THE BLUE. **HAD TO BE CUT OUT OF THE CHILD SEAT. THE HARNESS BUCKLE WOULD NOT RELEASE**. BOTH ME AND MY HUSBAND TRIED TO GET BUCKLE TO RELEASE. WE HAD TO IMMEDIATELY PURCHASE A NEW CAR SEAT. *TR |
| April 5, 2012 | GRACO CARSEAT THAT WAS PURCHASED IN DECEMBER, 2011 (NEW). **UNABLE TO RELEASE BUCKLE ON THE 5 PT HARNESS**. CHILD HAD TO BE REMOVED BY UNBUCKLING CHEST HARNESS AND LOOSENING SHOULDER STRAPS. *TR |
| April 8, 2012 | 1. NO EVENTS LED UP TO THE FAILURE, OTHER THAN NORMAL USE. 2. FAILURE OF HARNESS BUCKLE OF GRACO MYRIDE 65. **BUCKLE CANNOT BE RELEASED, LEAVING YOUR CHILD STUCK IN THE SEAT.** TODAY, 4/8/2012, **I HAD TO ATTEMPT TO USE PLIERS TO RELEASE THE HARNESS BUCKLE TO REMOVE MY CHILD FROM THE SEAT**. THIS DID NOT WORK SO I HAD TO GENTLY LIFT HIS LEG THROUGH THE BELT AFTER RELEASING THE CHEST HARNESS. 3. SENT MESSAGE TO GRACO REPORTING THIS FAILURE. THE CAR SEAT |

| | | |
|---|---|---|
| | | CANNOT BE USED AT THIS TIME. THE **HARNESS BUCKLE IS STILL JAMMED AND CANNOT BE RELEASED**. *TR |
| | May 10, 2012 | CPSC#X1260056A. GRACO NAUTILUS. CONSUMER STATED THE LATCH ON THE CAR SEAT **WOULD NOT UNLATCH**. SHE STATED **THE LATCH HAD TO BE CUT, IN ORDER TO RELEASE THE CHILD**. *LN |
| | June 27, 2012 | 1. **THE 5 POINT HARNESS BEGAN TO STICK A BIT A FEW WEEKS BACK MAKING IT DIFFICUT TO OPEN TO GET MY CHILD OUT OF THE SEAT**. ALSO, IT WOULD SOMETIMES POP OPEN WHILE I WAS DRIVING. 2. TODAY, MY **HUSBAND HAD TO CUT MY 2 1/2 YEAR OLD OUT OF HIS CAR SEAT BECAUSE HE WAS TRAPPED IN THE HARNESS THAT WOULD NOT OPEN**. 3. WE CONTACTED GRACO AND REQUESTED A REFUND. *TR |
| | September 1, 2012 | THE GRACO NAUTILUS CAR SEAT **DOESN'T UNLATCH PROPERLY FROM THE HARNESS BUCKLE**. THE ONE IN MY HUSBAND'S CAR YOU HAVE TO PUSH EXTREMELY HARD AND TUG ON THE HARNESS SEVERAL TIMES TO RELEASE FROM THE HARNESS BUCKLE. THE SAME MAKE/MODEL IN MY CAR, **THE LEFT CLIP IN THE HARNESS BUCKLE WILL NOT RELEASE AT ALL**. I HAD TO HAVE MY CHILD CRAWL OUT OF THE STRAPS TO GET OUT OF HIS CAR SEAT. **IF WE WERE IN AN ACCIDENT AND/OR THE CAR CAUGHT FIRE, I WOULD NEED SCISSORS TO PRY MY CHILD'S RESTRAINTS OFF OF HIM**. IF I DID NOT HAVE SCISSORS, IT MAKES ME SICK TO THINK WHAT COULD HAVE HAPPENED IN THIS |

SECOND AMENDED CLASS ACTION COMPLAINT

| | | |
|---|---|---|
| | | SITUATION. THERE IS A GREAT CHANCE MY CHILD WOULD NOT HAVE MADE IT OUT OF THE VEHICLE ALIVE. I AM FURIOUS THAT THE CAR SEAT ISN'T EVEN 3 YEARS OLD AND SHOULD HAVE LASTED THE DURATION OF HIM NEEDED THE BOOSTER, BUT NOW IT IS USELESS AS A CHILD RESTRAINT AND I HAD TO BUY A NEW ONE. WHAT A WASTE OF MONEY!! *TR |
| | September 10, 2012 | ON THE BOTTOM BUCKLE OF OUR MY RIDE 65 (DATE OF MANUFACTURER 12/11) **STARTED TO STICK**, NOW ALLOWING THE ACTUAL BUCKLE TO BE UNDONE AND LET THE CHILD OUT OF THE SEAT. I CALLED GRACO ON 10/3 AND THEY LET ME KNOW THEY COULDN'T REPLACE THE BUCKLE RIGHT AWAY BUT WERE WILLING TO REPLACE THE ENTIRE SEAT FOR ME, UNDERSTANDING I WAS TO SHIP BACK THE OLD SEAT AND WAIT FOR THE NEW SEAT AND THAT I'D HAVE TO USE A SPARE IN THE MEANTIME. THEY ARE LUCKY I HAD A SPARE. **THIS IS THE SECOND MY RIDE I'VE OWNED WITH THE SAME BOTTOM BUCKLE PROBLEM**. THE FIRST BUCKLE THEY'VE SINCE RE-MODELED BUT THE ISSUE DOESN'T SEEM TO BE RESOLVED. *TR |
| | September 26, 2012 | GRACO NAUTILUS HARNESSED BOOSTER SEAT/MANUFACTURE DATE 12/11, PURCHASE DATE 4/12 THE **HARNESS BUCKLE ON THIS SEAT BECOMES STUCK AND IT IS VERY DIFFICULT TO DISENGAGE THE BUCKLE IN ORDER TO REMOVE THE CHILD** FROM THE SEAT. IT **HAS TAKEN UPWARDS TO 10 MINUTES TO** |

UNBUCKLE THE CHILD. I AM CONCERNED THAT IF THERE WERE AN ACCIDENT OR AN EMERGENCY, THAT IT WOULD BE VERY DIFFICULT TO REMOVE CHILD FROM THE CAR. I CONTACTED THE COMPANY AND THEY ARE SENDING A REPLACE HARNESS/BELT SYSTEM. HOPEFULLY THIS WILL CORRECT THE PROBLEM. *TR

**Defendants Had Exclusive Knowledge of the Defects**

37.     Defendants had superior and exclusive knowledge of the buckle defects, and knew or should have known that the defects were not known or reasonably discoverable by Plaintiff and Class Members before they purchased the class car seats.

38.     Plaintiff is informed and believe and based thereon alleges that before Plaintiff purchased his car seat, and since at least 2009, Defendants knew about the defects through sources not available to consumers, including, but not limited to, pre-release testing data, early consumer complaints about the defects to Defendants and related retailers, testing conducted in response to those complaints, high failure rates, return and exchange data, among other internal sources of aggregate information about the problem.

39.     Indeed, Plaintiff is informed and believe and based thereon alleges that at all times during the relevant time period, Defendants would monitor NHTSA and various other websites, as well as receive complaints and feedback from consumers, in order to evaluate their products, including the class car seats at issue.  In fact, in several of the NHTSA complaints described above, several of the complainants had contacted Defendants directly to address their concerns with the unbuckling problems of the class car seats.  Plaintiff is informed and believe and based thereon alleges that at all times during the relevant time period that Defendants reviewed and/or used complaints and feedback from consumers about the class car seats' QT buckle to evaluate them.

40.     Several of the complaints concerning the class car seats pre-date Plaintiff's purchase of his class car seats.  Of the NHTSA complaints described above, five pre-dated Plaintiff's purchase of his first class car seat on or about March of 2010 and twenty-two pre-

dated Plaintiff's purchase of his second class car seat on or about November of 2011.

41.     Complaints concerning the class car seats are also found on other websites, several of which pre-date Plaintiff's purchase of his first class car seat.  For example, the following are some complaints relating to the car seats submitted on Amazon.com (spelling and grammar mistakes remain as found in the original):

| Date of Incident | Summary |
| --- | --- |
| April 22, 2009 | **Starfish and Coffee (April 22, 2009):** The latch would not unbuckle. My son couldn't get it. We could barely unbuckle him. My husband threatened to cut him out of it several times. My son refers to it as "THE WORST CAR SEAT EVER". I loved it until I had to get him out. I am actually am shipping it back to Graco in case they should do a recall, (at my expense). Honestly, it isn't safe due to the inability to get him out quickly. Test it in the store the ONE YOU ARE BUYING. Some work some don't and they don't "loosen up" as we thought. Gave it four months. Went and bought a Britax, (painfully expensive but safety is worth it). WHile the cup holder is better in the Graco and there is a place for small toys the Graco was a loser for us. Oh and once the child is old enough for a booster the child is too big for the Graco's crotch strap. It acually is WAY behind the child so the kid sits on it. That is even on the largest setting on a small for his age child. I couldn't imagine what that would do under tension on a small child in an accident. |
| May 11, 2009 | **Rlee (May 11, 2009):** Cons: buckles are a bit difficult to open. some reviews say the buckle's placement pinches legs and needs to be farther out. Not an issue for us yet, but the buckle's placement is inconvenient since my son is usually sitting on the buckle after he |

Second Amended Class Action Complaint

| | | |
|---|---|---|
| | | climbs in and i need him to get back out to retrieve it. |
| | August 3, 2009 | **Melody Lumkin (August 3, 2009):** On the seat we bought, one of the sides of the buckle sticks horribly. I have to use two hands (one pressing the button, one pulling up on the strap) to release it. My husband has to do the same. This was not the case on the seat we borrowed. I will be emailing Graco and seeing if there is a fix for this. |
| | August 22, 2009 | **Collins "TC" (August 22, 2009):** the right side of the buckle will not release. my 5 yr old gets so frustrated because she can not get out. she got out of the britax- no problem. I have a hard time getting it to release as well. I don't know if I can get a different buckle. I may go back to the Britax- Frontier. |

42.     On information and belief, and based upon the facts likely to have evidentiary support after a reasonable opportunity for further investigation and discovery, through testing, research, complaints and the ODI investigation, among other things, Defendants knew or should have known that the class car seats were defective because their harness buckles do not work as intended and impede the ability of, or otherwise prevent, the safe and timely removal of the child from the car seat.

43.     Indeed, Graco's response to the NHTSA investigation confirms that Graco was "keenly aware" of the unlatching issue with respect to the specific model car seats alleged herein that had the QT Buckle design; that Graco had "a consumer dissatisfaction issue" related to the buckles; that Graco acknowledged "consumer frustration" with the buckles and was addressing the complaints through design improvements; and that Graco secretly agreed to extend the normal one year warranty coverage to an unlimited warranty on the buckle components for consumers who complained about the buckle.  As stated in Graco's response to the NHTSA investigation: "This issue is a consumer frustration and a consumer experience

1    that Graco has been working to improve."

2          44.    Moreover, while Graco's response to the NHTSA investigation attributed the

3    inability of the buckles to de-latch to foreign material accumulating in the buckle, Defendants'

4    response does not redress the harm caused by the underlying design and/or manufacturing

5    defect endemic to the QT Buckle, other than to state that Graco is "implementing design

6    improvements" and that Graco "has been on a path to improve the user interface of the

7    buckles."  Additionally, reasonable consumers expect that children's car seats will get dirty

8    and that even if some dirt accumulates in the latch, the buckles will open.  To the extent that

9    Defendants contend that the buckle malfunction is due to foreign material accumulating in the

10   buckle and consumers' failures to clean the buckle apparatus, Defendants failed to disclose,

11   adequately or at all, material information regarding the necessary cleaning procedures for the

12   car seats, and consumers have complained that they cannot open the buckles even after

13   cleaning the buckle mechanism.

14         45.    On or about February 21, 2013, the ODI upgraded its investigation to an

15   Engineering Analysis to further study the defect of the class car seats. The ODI decided that

16   further analysis is warranted and will now conduct a more detailed and complete analysis of the

17   character and scope of the class car seats' unbuckling issues.

18         46.    The existence of the buckle defects are material facts that a reasonable consumer

19   would consider when deciding whether to purchase, and/or how much to pay, for the class car

20   seats.  Had Plaintiff and Class Members known that the class car seats were equipped with

21   defective harness buckles, they would not have purchased the class car seats or would have paid

22   less for them.

23         47.    Reasonable consumers, like Plaintiff, reasonably expect that a child's car seat is

24   safe, will function in a manner that will not pose a safety hazard, and is free from defects.

25   Plaintiff and Class Members further reasonably expect that Defendants will not sell car seats

26   with known safety defects, such as the harness buckle defects, and will disclose any such defects

27   to its consumers when they learn of them.  Plaintiff and Class Members did not expect

28

1    Defendants to fail to disclose the harness buckle defects to them and to continually deny the

2    defects.

3              **Defendants Actively Concealed the Harness Buckle Defects**

4         48.    While Defendants have been fully aware of the harness buckle defects in the

5    class car seats, they actively concealed the existence and nature of the defects from Plaintiff and

6    Class Members at the time of purchase, and thereafter.  Specifically, Defendants failed to

7    disclose or actively concealed at and after the time of purchase:

8                   (a)    any and all known material defects or material nonconformity of the

9                          class car seats, including the harness buckle defects described herein;

10                  (b)    that the class car seats, including their "QT Buckle," were not in good

11                         working order, were defective, and were not fit for their intended

12                         purposes; and

13                  (c)    that the class car seats and their "QT Buckles" were defective, despite

14                         the fact that Defendants learned of such defects through customer

15                         complaints, monitoring of NHTSA and various other websites, the ODI

16                         investigation, testing and related research data, as well as through other

17                         internal sources.

18        49.    To this day, Defendants still have not notified Plaintiff or Class Members that the

19   class car seats suffer from systemic defects that cause the harness buckle to malfunction.

20        50.    Defendants' unfair and deceptive business practices have caused Plaintiff and

21   other California consumers to lose money in that they purchased or paid a premium for the class

22   car seats when they otherwise would not have.  Plaintiff, on behalf of himself and all other

23   similarly situated persons, seeks actual and/or compensatory damages, restitution and equitable

24   relief, costs and expenses of litigation, attorneys' fees, and all other available relief for Plaintiff

25   and all Class Members as described below.

26                              **PLAINTIFF'S FACTS**

27        51.    In or about March of 2010, Plaintiff Seth Long and his wife purchased a Graco

28   My Ride 65 car seat from a Babies "R" Us retail store located in Colma, California.  The Graco

My Ride 65 car seat Plaintiff purchased was equipped with the QT Buckle at issue in this Complaint.  Before purchasing the Graco My Ride 65 car seat, Plaintiff Long and his wife did research about the car seat including, but not limited to, reviewing the product packaging and related descriptions, including the packaging's safety information.  Based on the information he and his wife read and considered, including Defendants' advertisement that the "5-point, front-adjust harness helps you get baby in and out," Plaintiff ultimately purchased the Graco My Ride 65 car seat.

52.     Plaintiff Long purchased his car seat primarily for his personal, family, or household purposes.  At all times, Plaintiff, like all Class Members, used the Graco car seat in a foreseeable manner, pursuant to instructions, and in the manner in which it was intended to be used.

53.     A few months after purchasing the Graco My Ride 65 car seat, Plaintiff Long began experiencing problems with the buckle in that it was unreasonably difficult or impossible to unlatch.  During one event, his son was trapped in the car seat because the QT Buckle would not unlatch.  Plaintiff had to use a knife to unlatch the buckle.  Because the car seat continued to malfunction, Plaintiff complained to Defendants, and Defendants subsequently sent him a replacement buckle.  Despite receiving a replacement buckle, Plaintiff continued to experience the same difficulties with unlatching the buckle.

54.     In November of 2011, Plaintiff was required by his insurance company to purchase a second Graco My Ride 65 car seat as a replacement after a car accident.  Plaintiff's insurance company explained to him that it would only reimburse him for the cost of a replacement car seat if he purchased the exact same model car seat that he had prior to the accident.  In order to receive reimbursement from his insurance company, and because at that point Plaintiff believed that the issues he had with the first car seat may have been unique to that specific car seat, Plaintiff purchased a second Graco My Ride 65 car seat, relying on the same omissions and misrepresentations  by Defendant as in his initial purchase.  The second Graco My Ride 65 car seat also came equipped with the QT Buckle at issue in this action.  Soon afterwards, Plaintiff experienced problems with unlatching the second Graco My Ride

65 car seat's buckle.  Within approximately six months, the QT Buckle in the second Graco My Ride 65 car seat jammed to where Plaintiff could not open it at all.  Ultimately, Plaintiff was forced to loosen the harness straps as much as possible and wiggle his child through the side of the car seat.  After the problems he experienced with the second Graco car seat equipped with the QT Buckle, which confirmed for Plaintiff that there was an undisclosed problem with the QT Buckle or design, Plaintiff stopped using the Graco My Ride 65 car seat and purchased another car seat from a different company.

55.     Had Plaintiff known that the Graco car seat he purchased was equipped with a defective buckle, Plaintiff would either not have purchased the products or would have paid less for the products.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

57.     Plaintiff's proposed Class consists of and is defined as follows:

> All California residents who purchased a Graco car seat in California, which was manufactured between January 1, 2009 and October 2012 and was equipped with the "QT Buckle" ("Class").

58.     Excluded from the Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

59.     Plaintiff reserves the right to redefine the Class and to add subclasses as appropriate based on discovery and specific theories of liability.

60.     Members of the Class will be referred to hereinafter as "Class Members."

61.     Numerosity:  The Class Members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of the entire Class is unknown to

Plaintiff at this time; however, given that, on information and belief, Defendants sold millions of car seats with the QT Buckles nationwide during the Class Period, it is reasonable to presume that the members of the Classes are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

62.    <u>Commonality</u>:  There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

    (a)    Whether the class car seats suffer from defects relating to the QT Buckle;

    (b)    Whether the defects relating to the QT Buckle constitute an unreasonable safety risk;

    (c)    Whether Defendants know about the defects relating to the QT Buckle and, if so, how long Defendants have known of the defect;

    (d)    Whether the defective nature of the QT Buckle constitutes a material fact;

    (e)    Whether Defendants have a duty to disclose the defective nature of the QT Buckle to Plaintiff and Class Members;

    (f)    Whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

    (g)    Whether Defendants knew or reasonably should have known of the defects relating to the QT Buckle before Defendants sold the class car seats to Plaintiff and Class Members;

    (h)    Whether Defendants breached the implied warranty of merchantability pursuant to the Song-Beverly Act or Magnuson-Moss Warranty Act;

    (i)    Whether Defendants made fraudulent omissions or false, untrue, and/or misleading statements regarding the class car seats;

(j)     Whether Defendants engaged in a violation of the California Consumers Legal Remedies Act;

(k)     Whether Defendants engaged in unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(l)     The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

63.     <u>Typicality</u>:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he is similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class Members' as demonstrated herein.

64.     <u>Adequacy</u>:  Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts, or differences with any Class Member.  Plaintiff's attorneys, the proposed Class Counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

65.     <u>Predominance</u>:  Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of the Class.  The elements of the legal claims brought by Plaintiff and the Class are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

66.     <u>Superiority</u>:  Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants'

1   misconduct.  Absent a class action, Class Members will continue to incur damages and

2   Defendants' misconduct will continue without remedy.  Class treatment of common questions

3   of law and fact would also be a superior method to multiple individual actions or piecemeal

4   litigation in that class treatment will conserve the resources of the courts and the litigants and

5   will promote consistency and efficiency of adjudication.

6         67.    The Class may also be certified because:

7             a.    the prosecution of separate actions by individual Class Members would

8                 create a risk of inconsistent or varying adjudication with respect to

9                 individual Class Members, which would establish incompatible

10                standards of conduct for Defendants;

11             b.    the prosecution of separate actions by individual Class Members would

12                 create a risk of adjudications with respect to them that would, as a

13                 practical matter, be dispositive of the interests of other Class Members

14                 not parties to the adjudications, or substantially impair or impede their

15                ability to protect their interests; and

16             c.    Defendants have acted or refused to act on grounds generally applicable

17                 to the Class, thereby making appropriate final and injunctive relief with

18                 respect to the members of the Class as a whole.

19             **TOLLING OF THE STATUTE OF LIMITATIONS**

20         68.    Because the defect is undetectable until it manifests, Plaintiff and Class

21   Members were not reasonably able to discover the problem until after purchasing the class car

22   seats, despite exercise of due diligence.

23         69.    Plaintiff and the Class Members had no realistic ability to discern that the QT

24   Buckle on the class car seats were defective.  Therefore, the discovery rule is applicable to the

25   claims asserted by Plaintiff and the Class Members.

26         70.    Plaintiff is informed and believes and based thereon alleges that Defendants

27   have known of the defect since at least 2009 and have concealed from or failed to alert owners

28   of the class car seats of the defective nature of the QT Buckle.  It was only in October 2012

that NTHSA began investigating the defect.  Further, it was only months after purchasing the Graco My Ride 65 car seat that Plaintiff Long began experiencing problems with the buckle in that it was unreasonably difficult or impossible to unlatch.  Further, it was not until after Plaintiff Long purchased his second Graco My Ride 65 car seat that he confirmed that there was an undisclosed problem with the QT Buckle or design.

71.     Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein.  Defendants are further estopped from relying on any statute of limitation because of its concealment of the defective nature of the class car seats' QT Buckles.

**FIRST CAUSE OF ACTION**

**Violation of the Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

72.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

73.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA").

74.     The CLRA has adopted a comprehensive statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes.

75.     Defendants are "persons" as defined by Civil Code section 1761(c) because they are corporations.

76.     Plaintiff and Class Members are "consumers" within the meaning of Civil Code section 1761(d) because they are individuals who purchased one or more of the class car seats from Defendants for personal and/or household use.

77.     Defendants' class car seats are "products" within the meaning of California Civil Code § 1761 (a) in that they are tangible chattels bought for personal, family, and/or household purposes.

78.     Plaintiff's and Class Members' payments for the class car seats are "transaction[s]" as defined by Civil Code section 1761 (e), because Plaintiff and Class Members paid monies in exchange for said products.

79.     Plaintiff has standing to pursue this claim as he has suffered an injury in fact and has lost money as a result of Defendants' actions as set forth herein.  Specifically, Plaintiff purchased one of the class car seats when he otherwise would not have purchased or would have paid less for the product had he known it was defective.

80.     Plaintiff and Class Members reviewed, believed, and relied upon the omissions of fact made by Defendants as explained more fully above, in deciding whether to purchase or pay a premium for the class car seats.

81.     As set forth above, Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) by:

a)      Violating section (5) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.  More specifically, Defendants advertised and stated that their class car seats had characteristics, uses, and/or benefits which included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that the class car seats were free from defects and fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out" when in fact Defendants knew, or should have known that the class car seats were defective and thus did not have those characteristics, uses, and/or benefits;

b)      Violating section (7) by representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.  More specifically, Defendants advertised and stated that their class car seats included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that

the class car seats were free from defects and fit for their ordinary

purpose, and that the class car seats and their QT Buckle "helps you get

baby in and out" when in fact Defendants knew, or should have known

that the class car seats were defective and thus were not of that standard,

quality, or grade; and

c)     Violating section (9) by advertising goods or services with the intent not

to sell them as advertised.  More specifically, Defendants advertised that

their class car seats included the ability to buckle and unbuckle children

in the car seat in a reasonable manner, that the class car seats were free

from defects and fit for their ordinary purpose, and that the class car seats

and their QT Buckle "helps you get baby in and out" when in fact

Defendants knew, or should have known that the class car seats were

defective and thus were not sold as advertised.

82.     On February 13, 2013, pursuant to section 1782 of the CRLA, Plaintiff notified

Defendants in writing of the particular violations of section 1770 of the CLRA and demanded

that Defendants rectify the problems associated with the behavior detailed above, which acts

and practices are in violation of Civil Code section 1770.  True and correct copies of the letters

are attached hereto as Exhibit B.

83.     Defendants failed to adequately respond to Plaintiff's above-described demands

and failed to give notice to all affected consumers, pursuant to Civil Code § 1782.

84.     Plaintiff has filed concurrently herewith the declarations of venue required by

Civil Code section 1780(d).

85.     Plaintiff seeks an order enjoining the act and practices described above,

restitution of property, and any other relief that the court deems proper.

86.     Because Defendants' failed to rectify or agree to adequately rectify the problems

associated with the actions detailed above, Plaintiff additionally seeks damages, restitution,

punitive damages, attorneys' fees and costs, and any other relief available under § 1780(a) of the

CRLA pursuant to Civil Code section 1782(d).

**SECOND CAUSE OF ACTION**

**Breach of Implied Warranty**

**(Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*)**

87.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

88.     Defendants are, and at all relevant time were, merchants engaged in the business of selling, among other things, the class car seats.

89.     Plaintiff and Class Members purchased the class car seats.

90.     Defendants, as the designers, manufacturers, distributers, and sellers of class car seats warranted, both expressly and impliedly, as set forth more fully above, that the class car seats would, among other things, permit the buckling and unbuckling of children from their car seats, would perform as intended, were free from defects, were fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out."

91.     Defendants breached the duty of implied warranty by selling the class car seats in a manner that did not conform to the promises or affirmations of fact made by Defendants, set forth above, including those made on the labeling and packaging because they were defective.

92.     As a direct and proximate result of these misrepresentations, Plaintiff and Class Members have been damaged in an amount to be proven at trial.  The damages suffered by Plaintiff and Class Members include, but are not limited to, the monies paid to Defendants for products.

**THIRD CAUSE OF ACTION**

**Breach of Implied Warranty**

**(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.)**

93.     Plaintiff incorporates by reference each proceeding and succeeding paragraph as applicable as though fully set forth at length herein.

94.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

95.     Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. §

1   2301(4)-(5).

2       96.     The class car seats are "consumer products" within the meaning of 15 U.S.C. §

3   2301(1).

4       97.     Defendants impliedly warranted that the class car seats were of merchantable

5   quality and fit for such use.

6       98.     Contrary to the applicable implied warranties, the class car seats at the time of

7   sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff

8   and the Class Members with reliable and safe means to remove a child from the car seat.

9       99.     The amount in controversy of the Plaintiff's individual claim meets or exceeds

10  the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or

11  value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be

12  determined in this suit.

13      100.    Defendants have been afforded a reasonable opportunity to cure their breach of

14  implied warranty.  Plaintiff, on his own behalf, and on behalf of Class Members, has provided

15  Defendants reasonable notice of the breach of the implied warranties through their CLRA

16  letters.  Defendants have also received reasonable notice of the breach through negative

17  customer comments on Defendants' website, blog, and Facebook page, through negative

18  comments on various consumer websites, through letters to Defendants, and through

19  complaints via customer service, and otherwise.

20                              **FOURTH CAUSE OF ACTION**

21                             **Violation of Unfair Competition Law**

22                          **(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

23      101.    Plaintiff hereby incorporates by reference the allegations contained in the

24  preceding paragraphs of this Complaint.

25      102.    Defendants need only have violated one of the various provisions of the Unfair

26  Competition Law to be found strictly liable under this cause of action.

27      103.    Defendants' material misrepresentations, concealment, and omission of

28  material facts, as set forth above, were false, misleading, and/or likely to deceive the public

1    within the meaning of California Business and Professions Code § 17200.

2        104.    Defendants' conduct constitutes "unfair" business acts and practices within the

3    meaning of California Business and Professions Code §§ 17200, *et seq.* because any utility for

4    Defendants' conduct is outweighed by the gravity of the consequences to Plaintiff and Class

5    Members, and because their conduct was injurious to consumers, offended public policy, and

6    was unethical and unscrupulous.  Defendants' sale of the class car seats to Plaintiff and Class

7    Members was an "unfair" business practice in that Plaintiff and Class Members were provided

8    a defective product which did not conform to implied warranties given by Defendants.

9    Plaintiff also asserts a violation of public policy by making false, untrue, and/or misleading

10   statements, and omissions of fact, to consumers.  Defendants' violation of consumer

11   protection and unfair competition laws in California and other states resulted in harm to

12   consumers.

13       105.    Defendants' conduct is also unlawful within the meaning of California Business

14   and Professions Code §§ 17200, *et seq.* in that they constitute:

15           (a)    A violation of Cal. Civ. Code §§ 1750, *et seq.*;

16           (b)    A violation of Cal. Civ. Code §§ 1792, 1791.1, and 1793;

17           (c)    A breach of implied warranty of merchantability pursuant to the

18                  Uniform Commercial Code, as adopted by California (Cal. Com. Code

19                  § 2314); and

20           (d)    A violation of 15 U.S.C. § 2301.

21       106.    There were reasonable alternatives available to Defendants to further

22   Defendants' legitimate business interests, other than the conduct described herein.

23       107.    Defendants' conduct caused and continues to cause injury to Plaintiff and the

24   other Class Members.  Plaintiff and Class Members have suffered and will continue to suffer

25   injury in fact and have lost money as a result of Defendants' fraudulent conduct in the form of

26   monies paid for the class car seats.

27       108.    Defendants have thus engaged in unlawful, unfair, and fraudulent business acts

28   entitling Plaintiff and Class Members to judgment and equitable relief against Defendants, as

1    set forth in the Prayer for Relief.

2        109.    Additionally, pursuant to Business and Professions Code section 17203,

3    Plaintiff and Class Members seek an order requiring Defendants to immediately cease such

4    unlawful, unfair, and fraudulent business practices and to correct their actions.

5        110.    Defendants' conduct, as described above, violates Cal. Bus. & Prof. Code

6    section 17200, *et seq*. and entitles Plaintiff and Class Members to restitution and injunctive

7    relief.

8        111.    To this day, Defendants continue to violate the California Business and

9    Professions Code section 17200, *et seq.*by continuing to advertise their class car seats in a

10   manner that is likely to deceive the consuming public.

11       112.    As a direct and proximate result of Defendants' violation of the California

12   Business and Professions Code section 17200, *et seq.*, Plaintiff and Class Members have

13   suffered and will continue to suffer injury in fact and actual damages.

14       113.    As a proximate result of Defendants' violation of the California Business and

15   Professions Code section 17200, *et seq.*, Defendants have been unjustly enriched and should

16   be required to make restitution to Plaintiff and Class Members or disgorge their ill-gotten

17   profits pursuant to Business & Professions Code section 17203.

18       114.    Pursuant to California Business & Professions Code section 17203, Plaintiff,

19   individually and on behalf of the Class, seeks an order of this Court requiring Defendants to

20   immediately cease such acts of unfair competition and enjoining Defendants from continuing

21   to conduct business via the unlawful, fraudulent, or unfair business acts and practices

22   complained of herein and from failing to fully disclose the true nature of their

23   misrepresentations.

24       115.    Plaintiff, on behalf of himself and all others similarly situated, further request

25   injunctive relief in the form of restitution and disgorgement and all other relief allowed under

26   section 17200, plus interest attorneys' fees and costs pursuant to, *inter alia*, Cal. Code of Civ.

27   Proc. section 1021.5.

28   ///

1    **MISCELLANEOUS**

2    116.    Plaintiff and Class Members allege that they have fully complied with all

3  contractual and other legal obligations and fully complied with all conditions precedent to

4  bringing this action or all such obligations or conditions are excused.

5    **REQUEST FOR JURY TRIAL**

6    117.    Plaintiff requests a trial by jury of all issues which may be tried by a jury.

7    **PRAYER FOR RELIEF**

8    118.    Plaintiff, on behalf of himself and the Class, request the following relief:

9        a)    An order certifying the Class and appointing Plaintiff as Representative

10              of the Class;

11        b)    An order certifying the undersigned counsel as Class Counsel;

12        c)    An order requiring Defendants, at their own cost, to notify all Class

13              Members of the material omissions discussed herein;

14        d)    An order requiring Defendants to cease the illegal conduct set forth in this

15              complaint;

16        e)    An order requiring Defendants to engage in corrective advertising

17              regarding the omissions set forth above;

18        f)    Actual damages suffered by Plaintiff and Class Members or full

19              restitution of all funds acquired from Plaintiff and Class Members from

20              their purchase of the class car seats;

21        g)    Punitive damages, as allowable, in an amount determined by the Court or

22              jury;

23        h)    Any and all statutory enhanced damages;

24        i)    All reasonable and necessary attorneys' fees and costs provided by

25              statute, common law, or the Court' inherent power;

26        j)    Pre- and post-judgment interest; and

27  ///

28  ///

1              k)      All other relief, general or special, legal and equitable, to which Plaintiff

2                      and Class Members may be justly entitled as deemed by the Court.

3

4    Dated:  September 25, 2013                    Respectfully submitted,

5                                                  Capstone Law APC

6

7                                        By:  /S/ Jordan L. Lurie

8                                             Jordan L. Lurie
                                             Tarek H. Zohdy
                                             Cody R. Padgett
9

10                                           Attorneys for Plaintiff Seth Long

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
David L. Cheng (SBN 240926)
David.Cheng@capstonelawyers.com
Sue J. Kim (SBN 256392)
Sue.Kim@capstonelawyers.com
Arvin Ratanavongse (SBN 257619)
Arvin.Ratanavongse@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:     (310) 556-4811
Facsimile:     (310) 943-0396

Attorneys for Plaintiff Seth Long

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH LONG, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GRACO CHILDREN'S PRODUCTS INC., a Delaware corporation; NEWELL RUBBERMAID INC., a Delaware corporation,<br><br>Defendants. | Case No.:<br><br>DECLARATION OF SETH LONG IN SUPPORT OF VENUE FOR CLASS ACTION COMPLAINT PURSUANT TO CIVIL CODE SECTION 1780(d) |

Exhibit A, Page 040

I, Seth Long, declare under penalty of perjury as follows:

1.    I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, which I believe to be true. I am over the age of eighteen, a citizen of the State of California, and am a named Plaintiff in the litigation described in the caption page of this declaration.

2.    This declaration is made pursuant to California Civil Code section 1780(d).

3.    The complaint filed concurrently with this declaration contains a cause of action for violation of the Consumers Legal Remedies Act against the above named Defendants which advertise, manufacture, and sell the Graco car seats at issue in the complaint.

4.    In or about March of 2010, my wife and I purchased a Graco My Ride 65 car seat at a Babies R Us retail store located in Colma, California.

5.    The transaction described above forms a substantial portion of this action, and occurred in the Northern District of California. To the best of my knowledge, based upon information and belief, Defendant does business in the Northern District of California, and advertises and markets its products, including the products at issue in this complaint, in the Northern District of California. Accordingly, the Northern District of California is a proper place for trial of this action.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

Executed this day of March 19, 2013 in Ventura, California.


*Seth Long*
_____
Seth Long

DECLARATION OF SETH LONG ISO VENUE

# EXHIBIT B



1840 Century Park East, Suite 450
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

JAMIE R. GREENE
310.556.4165 Direct
Jamie.Greene@capstonelawyers.com

February 13, 2013

VIA CERTIFIED MAIL; RETURN RECEIPT REQUESTED

NEWELL RUBBERMAID INC.
3 GLENLAKE PKWY
ATLANTA, GA 30328

Subject:     *CLRA Notice Regarding False Advertising Claims Related to Graco Car Seats*
             *Equipped with the QT Buckle*

NOTICE OF DEMAND FOR CORRECTIVE ACTION PURSUANT TO CALIFORNIA
CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1782, FOR
VIOLATIONS OF CALIFORNIA CIVIL CODE § 1770

Attention NEWELL RUBBERMAID INC. ("RUBBERMAID"):

Pursuant to California Civil Code section 1782, subsections (a) and (d), this letter notifies you that
you have committed acts or practices declared unlawful under the California Consumers Legal
Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

The CLRA prohibits certain unfair acts or practices directed toward consumers.  Specifically,
section 1770(a)(5) of the CLRA prohibits anyone from "[r]epresenting that goods or services have
sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not
have;" section 1770(a)(7) of the CLRA prohibits anyone from representing that goods are of a
particular standard, quality, or grade, if they are of another; and section 1770(a)(9) of the CLRA
prohibits anyone from "[a]dvertising goods or services with intent not to sell them as advertised."

We write on behalf of our client Seth Long and all other similarly situated persons in California who
purchased any Graco car seat manufactured between January 1, 2009 and October 2012 that
was equipped with a "QT Buckle" (referred to herein as the "class car seats" or "the products").
RUBBERMAID has advertised, warranted, and implied, based on the product packaging, online
advertisements, and elsewhere, that the class car seats were free from defects, fit for their ordinary
purpose and that the "5-point, front-adjust harness helps you get baby in and out"[1] when in fact

---

[1] *See*
http://www.gracobaby.com/Products/Pages/ProductDetails.aspx?ProductID=1786988, last

countless consumers have complained that the class car seats and their QT buckles are defective in that they will not unbuckle with reasonable force or will not unbuckle at all. RUBBERMAID knew, or, by the exercise of reasonable care, should have known, but omitted to state, that the class car seats were defective and that their statements about the quality and abilities of the class car seats were untrue, deceptive, or materially misleading. RUBBERMAID's marketing and advertising representations in connection with the sale of the class car seats, including its failure to disclose material facts, were false, untrue and misleading. Accordingly, in the advertisement and sale of the class car seats, RUBBERMAID has violated multiple sections of the CLRA. Relying on RUBBERMAID's misstatements, consumers such as Mr. Long were induced to purchase the class car seats when they otherwise would not have, or would have paid less for the product.

Specifically, RUBBERMAID violated various sections of Civil Code section 1770 including subsection (5), by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. More specifically, RUBBERMAID advertised and stated that their class car seats had characteristics, uses, and/or benefits which included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that the class car seats were free from defects and fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out"[2] when in fact RUBBERMAID knew, or should have known that the class car seats were defective and thus did not have those characteristics, uses, and/or benefits. RUBBERMAID also violated subsection (7) by representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. More specifically, RUBBERMAID advertised and stated that their class car seats included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that the class car seats were free from defects and fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out"[3] when in fact RUBBERMAID knew, or should have known that the class car seats were defective and thus were not of that standard, quality, or grade. Further, RUBBERMAID violated subsection (9) by advertising goods with the intent not to sell them as advertised. More specifically, RUBBERMAID advertised that their class car seats included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that the class car seats were free from defects and fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out"[4] when in fact RUBBERMAID knew, or should have known that the class car seats were defective and thus were not sold as advertised.

Mr. Long purchased the Graco My Ride 35 car seat from a Babies 'R' Us store in Colma, California. Prior to purchasing the car seat he read, considered, and relied on RUBBERMAID's advertising, including the product packaging, which promised a 5-point, front-adjust harness that "helps you get baby in and out." In reliance on RUBBERMAID's advertising, statements and

---

visited January 22, 2013.

[2] *Id.*

[3] *Id.*

[4] *Id.*

material omissions, Mr. Long purchased, for his own personal and household use, and paid a premium price for, a Graco My Ride 35 car seat. Mr. Long used the product as directed and pursuant to the instructions provided. However, in contrast to RUBBERMAID's advertising, the car seat did not perform as advertised and was defective. Had Mr. Long known that the car seat was defective, he would either not have purchased the product or would have paid less for the product.

Based on the foregoing, we hereby demand, on behalf of Mr. Long and similarly situated California purchasers of the class car seats, pursuant to the CLRA, Civil Code section 1782, that within 30 days of receiving this letter, RUBBERMAID:

1. Make full restitution to all persons who purchased a class car seat, of all monies wrongfully obtained as a result of the conduct described above, plus interest at the statutory rate of 10% per annum running from the date such amounts were due;

2. Provide public notice to California consumers about the true abilities, limitations, and defects related to the class car seats, specifically that the QT Buckle is defective; and

3. Provide monetary compensation, plus interest at the statutory rate of 10% per annum, running from the date such amounts were due, to all California consumers who were damaged as alleged herein.

Unless you agree to and implement the terms and conditions set forth above within 30 days of receipt of this notice and demand for corrective action, Mr. Long shall exercise his statutory right to assert claims for monetary damages and other relief under the CLRA, on behalf of all consumers in California that purchased a class car seat, including, but not limited to:

1. The actual damages suffered;

2. An order enjoining you from such methods, acts, or practices;

3. For restitution of property (when applicable);

4. Punitive damages;

5. Any other relief which the court deems proper; and

6. Court costs and attorneys' fees.

Pursuant to California Civil Code section 1782, subdivision (a)(2), this notice has been sent to you by certified mail, return receipt requested, to RUBBERMAID's corporate headquarters in Atlanta, Georgia, to RUBBERMAID's agent for service of process in California, and to the location in California where the transaction occurred.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

Jamie R. Greene
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, CA 90067
(310) 556-4811

Best Regards,

Jamie R. Greene



1840 Century Park East, Suite 450
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

JAMIE R. GREENE
310.556.4165 Direct
Jamie.Greene@capstonelawyers.com

February 13, 2013

VIA CERTIFIED MAIL; RETURN RECEIPT REQUESTED

GRACO CHILDREN'S PRODUCTS INC.
3 GLENLAKE PKWY
ATLANTA, GA 30328

Subject:      *CLRA Notice Regarding False Advertising Claims Related to Graco Car Seats*
               *Equipped with the QT Buckle*

### NOTICE OF DEMAND FOR CORRECTIVE ACTION PURSUANT TO CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1782, FOR VIOLATIONS OF CALIFORNIA CIVIL CODE § 1770

Attention GRACO CHILDREN'S PRODUCTS INC. ("GRACO"):

Pursuant to California Civil Code section 1782, subsections (a) and (d), this letter notifies you that you have committed acts or practices declared unlawful under the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

The CLRA prohibits certain unfair acts or practices directed toward consumers. Specifically, section 1770(a)(5) of the CLRA prohibits anyone from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;" section 1770(a)(7) of the CLRA prohibits anyone from representing that goods are of a particular standard, quality, or grade, if they are of another; and section 1770(a)(9) of the CLRA prohibits anyone from "[a]dvertising goods or services with intent not to sell them as advertised."

We write on behalf of our client Seth Long and all other similarly situated persons in California who purchased any Graco car seat manufactured between January 1, 2009 and October 2012 that was equipped with a "QT Buckle" (referred to herein as the "class car seats" or "the products"). GRACO has advertised, warranted, and implied, based on the product packaging, online advertisements, and elsewhere, that the class car seats were free from defects, fit for their ordinary purpose and that the "5-point, front-adjust harness helps you get baby in and out"[1] when in fact

---

[1] *See*
http://www.gracobaby.com/Products/Pages/ProductDetails.aspx?ProductID=1786988, last

countless consumers have complained that the class car seats and their QT buckles are defective in that they will not unbuckle with reasonable force or will not unbuckle at all. GRACO knew, or, by the exercise of reasonable care, should have known, but omitted to state, that the class car seats were defective and that their statements about the quality and abilities of the class car seats were untrue, deceptive, or materially misleading. GRACO's marketing and advertising representations in connection with the sale of the class car seats, including its failure to disclose material facts, were false, untrue and misleading. Accordingly, in the advertisement and sale of the class car seats, GRACO has violated multiple sections of the CLRA. Relying on GRACO's misstatements, consumers such as Mr. Long were induced to purchase the class car seats when they otherwise would not have, or would have paid less for the product.

Specifically, GRACO violated various sections of Civil Code section 1770 including subsection (5), by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have. More specifically, GRACO advertised and stated that their class car seats had characteristics, uses, and/or benefits which included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that the class car seats were free from defects and fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out"[2] when in fact GRACO knew, or should have known that the class car seats were defective and thus did not have those characteristics, uses, and/or benefits. GRACO also violated subsection (7) by representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another. More specifically, GRACO advertised and stated that their class car seats included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that the class car seats were free from defects and fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out"[3] when in fact GRACO knew, or should have known that the class car seats were defective and thus were not of that standard, quality, or grade. Further, GRACO violated subsection (9) by advertising goods with the intent not to sell them as advertised. More specifically, GRACO advertised that their class car seats included the ability to buckle and unbuckle children in the car seat in a reasonable manner, that the class car seats were free from defects and fit for their ordinary purpose, and that the class car seats and their QT Buckle "helps you get baby in and out"[4] when in fact GRACO knew, or should have known that the class car seats were defective and thus were not sold as advertised.

Mr. Long purchased the Graco My Ride 35 car seat from a Babies 'R' Us store in Colma, California. Prior to purchasing the car seat he read, considered, and relied on GRACO's advertising, including the product packaging, which promised a 5-point, front-adjust harness that "helps you get baby in and out." In reliance on GRACO's advertising, statements and material omissions, Mr. Long purchased, for his own personal and household use, and paid a premium price for, a Graco My Ride 35 car seat. Mr. Long used the product as directed and pursuant to the

---

visited January 22, 2013.

[2] *Id.*

[3] *Id.*

[4] *Id.*

instructions provided. However, in contrast to GRACO's advertising, the car seat did not perform as advertised and was defective. Had Mr. Long known that the car seat was defective, he would either not have purchased the product or would have paid less for the product.

Based on the foregoing, we hereby demand, on behalf of Mr. Long and similarly situated California purchasers of the class car seats, pursuant to the CLRA, Civil Code section 1782, that within 30 days of receiving this letter, GRACO:

1.     Make full restitution to all persons who purchased a class car seat, of all monies wrongfully obtained as a result of the conduct described above, plus interest at the statutory rate of 10% per annum running from the date such amounts were due;

2.     Provide public notice to California consumers about the true abilities, limitations, and defects related to the class car seats, specifically that the QT Buckle is defective; and

3.     Provide monetary compensation, plus interest at the statutory rate of 10% per annum, running from the date such amounts were due, to all California consumers who were damaged as alleged herein.

Unless you agree to and implement the terms and conditions set forth above within 30 days of receipt of this notice and demand for corrective action, Mr. Long shall exercise his statutory right to assert claims for monetary damages and other relief under the CLRA, on behalf of all consumers in California that purchased a class car seat, including, but not limited to:

1.      The actual damages suffered;

2.     An order enjoining you from such methods, acts, or practices;

3.     For restitution of property (when applicable);

4.     Punitive damages;

5.     Any other relief which the court deems proper; and

6.     Court costs and attorneys' fees.

Pursuant to California Civil Code section 1782, subdivision (a)(2), this notice has been sent to you by certified mail, return receipt requested, to GRACO's corporate headquarters in Atlanta, Georgia, to GRACO's agent for service of process in California, and to the location in California where the transaction occurred.

Thank you for your attention to this matter.  If you have any questions, please contact me at the phone number or address below:

Jamie R. Greene
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, CA 90067
(310) 556-4811

Best Regards,

Jamie R. Greene